THE WESTERN UNION TELEGRAPH CO. v. ANDREW NEILL.

(Case No. 4131.)

1. TELEGRAPH COMPANIES.— Telegraph companies are not insurers against loss result-
ing from mistakes in messages transmitted, and they have the right, in a proper
manner and within proper limitations, to restrict their liability for damages.

2. SAME.— Telegraph companies may limit their liability for delays and errors in trans-
mitting and delivering messages, either by express contract, or by regulations
printed and brought to the notice of those dealing with them; especially is this
true in regard to night messages; but this will not extend to injuries caused by the
misconduct, fraud or want of due care on the part of the company, its servants or
agents.

3. SAME — NEGLIGENCE.— See statement and opinion for facts under which the
erroneous transmission of a message by a telegraph company was held to be, of
itself, insufficient evidence to establish negligence in the company.

4. TELEGRAPH COMPANY —.DAMAGES.— The fact that one acts on information not
true in fact, and conveyed by mistake in a telegram, will not render the company
liable for a larger amount of damage than that stipulated in their contract, if the
party injured had reason, before acting on the telegram, to doubt its accuracy, and
failed to have it verified by repetition.  The declarations of the operator that the
message is correct will not relieve from. the duty to have it repeated in a case of
doubt.

APPEAL from Travis.   Tried below before the Hon. E. B. Turner.

Suit brought in the district court of Travis county by appellee,
Andrew Neill, against appellant, the Western Union Telegraph Com-
pany, for $5,000 damages, alleged to have been caused by the negli-
gence of defendant in the transmission of a telegraphic dispatch.

The petition alleged that on the 8th day of May, 1878, plaintiff
owned a large amount of real estate in and near Seguin, Texas; that
he had there an agent, A. J. Fry, authorized to receive and transmit
to plaintiff offers from purchasers for such real estate, or any part
thereof; that plaintiff also had at Seguin an attorney in fact, W. E.
Goodrich, to execute and deliver deeds for such of plaintiff's real
estate as might be sold by plaintiff through his agent, Fry, after such
sales should be approved by plaintiff; that on said day defendant
was in the business of transmitting for hire, and offered to transmit
correctly, telegraphic messages from Seguin to Austin, where plaint-
iff lived.   That on that day plaintiff's agent, Fry, delivered to de-
fendant at Seguin, for transmission to plaintiff, the message found in
the opinion, and assured plaintiff that it was a correct copy.   That
being deceived by the false copy so delivered to him, and not know-
ing that the same was not a true copy, plaintiff was induced to tele-
graph to said Fry to close sale as reported.   That plaintiff's attorney
in fact, Goodrich, believing that plaintiff was informed of the terms
of sale, and had assented thereto, conveyed by deed to N. A. John-

son farming lots Nos. 4, 5 and 6 (about one hundred and fifty acres), and worth $2,500; and also what was known as plaintiff's home place, in Seguin (about eight acres), with improvements worth $5,000. That plaintiff understood from the message delivered to him that Fry had sold only blocks 4, 5 and 6 for the sum of $2,500, when in fact he had sold all the property, worth $7,500, for $2,500, and plaintiff was induced by the false telegram to accept the sale, whereby he was damaged $5,000.

The evidence showed that when appellee received the erroneous message he went to appellant's office in Austin and showed the message received to appellant's agent, and informed that agent that he did not understand the word " have " in the message, and desired to know if the message was correct. Appellant's agent replied, " That is just the way it struck me when I was receiving it, and therefore I broke on the word, and it was repeated to me ' have.' " Appellee also stated that he had at that time gone to appellant's agent to see if there was any mistake in the message delivered to him, and to have it repeated unless assured that the message was correct as delivered to him. Appellee at that time asked the agent of appellant whether he was certain that the message with the word " have " was just as received by the appellant from the sender. To which the agent of appellant at Austin replied that it was just as received; that he, the agent and operator at Austin, had it repeated as to the word " have," and it was repeated " have." At that time appellee was of the impression and believed that appellant's wires between Seguin and Austin were continuous, and did not know that the message had to be sent from Seguin to Houston and there repeated to Austin; and did not know that fact till some weeks afterwards. But for this statement of appellant's Austin agent appellee would have had the message repeated from the Seguin office before acting on it. After this conversation between appellee and the agent of appellant at Austin, appellee placed a construction on the message as delivered to him. Appellee construed the message in the light of the relations between him and the sender of the message and the surrounding and connected circumstances. He acted on the message delivered to him under these circumstances. The result was injury to the extent of the value of appellee's "home place " in Seguin, worth from $1,750 to $2,500, or more.

As a fact, the only wires of appellant for the transmission of messages from Seguin to Austin run from Seguin to Houston, and at Houston all messages between Seguin and Austin had to be repeated, and no message passed directly from Seguin to Austin. The appel-

lant's agent at Austin knew at the time appellee went to have the message repeated that appellant's line of wires were not continuous from Seguin to Austin, but that messages between those points had to go by way of Houston, and at Houston had to be repeated, but he did not state that fact to appellee. Judgment for plaintiff for $1,750.

*Walton, Green & Hill,* for appellant.

*Sheeks & Sneed,* for appellee.

I. The pleadings of plaintiff do not show a case of *prima facie* negligence on his part, and therefore it was not necessary for him to make averments to avoid the effect of such negligence. 46 Tex., and cases there cited.

II. The message which appellant undertook to transmit correctly was itself sufficient to put appellant on notice of the importance of its correct transmission. By calling for an answer, it did impart that a sale of property hinged on the answer, and made the company liable for damages resulting from an incorrect copy of it. In addition, the character of the answer returned by appellee by message sent by appellant fully notified appellant, before final consummation of the sale, that the approval of appellee was requisite before the transaction could be closed by Fry, the sender of the message. Baldwin *v.* U. Tel. Co., 6 Am. Rep., 165; Parks *v.* Alta Cal. Tel. Co., 13 Cal. 422 (9 Am. Rep., 153); The N. Y. and Washington Printing Telegraph Co. *v.* Drybourg, 35 Pa. St., 298 (9 Am. Rep., 150); W. U. Tel. Co. *v.* Buchanan, 35 Ind., 430.

III. First, there is no such contract limiting appellant's liability as that claimed by appellant; second, if there be such a contract, the same is against public policy and void; third, if there was such a contract as clamed by appellant, and if such contract is not contrary to public policy and void, then this case is taken out of the operation of such contract by the acts and declarations of appellant's agent at Austin after the delivery of the erroneous message, and before it was acted on by appellee, which acts and declarations prevented appellee from having the message repeated, and thus discovering the error before acting on it, and which acts and declarations induced appellee to act on the erroneous message as being a true and correct copy of the message delivered by Fry for transmission to the appellant's agent at Seguin. W. U. T. Co. *v.* Weiting, decided at Galveston by the Court of Appeals, March 26, 1881.

BONNER, ASSOCIATE JUSTICE.— The controversy in this case arises from an error in the transmission of a message over the line of the

appellant, the Western Union Telegraph Company, sent to the appellee, Andrew Neill, by his agent, A. J. Fry

The message was one known as a half-rate, or night message, being sent at half the rate charged for a day message.

The printed form accompanying it, and underneath which it was written, together with the message itself, the latter being in italics, is as follows:

## "THE WESTERN UNION TELEGRAPH COMPANY.

### HALF-RATE MESSAGE.

The business of telegraphing is liable to errors and delays, arising from causes which cannot at all times be guarded against, including sometimes negligence of servants and agents whom it is necessary to employ. Most errors and delays may be prevented by repetition, for which, during the day, half price extra is charged in addition to the full tariff rates.

The Western Union Telegraph Company will receive messages for transmission between stations in the United States east of the Mississippi river to be sent without repetition during the night, at one-half the usual rates, on condition that the sender will agree that he will not claim damages from it for errors or delays, or for non-delivery of such messages. happening from any cause other than the acts of its corporate officers, beyond a sum equal to ten times the amount paid for transmission; and that no claim for damages shall be valid unless presented in writing within twenty days from sending the message.

The company will be responsible to the limit of its lines only, for messages destined beyond, but will act as the sender's agent to deliver the message to connecting companies or carriers, if desired, without charge and without liability.

                                    WILLIAM ORTON, President.

GEO. H. MUMFORD, Secretary.

_Seguin May. 8. 1878._

Send the following half-rate message subject }
    to the above terms, which are agreed to:  }

    To _Col. A. Neill_
                _Austin._

_Sold Block 4, 5 & 6 & home place for Two Thousand five hundred $2000. down five hundred nine months.    Answer_

                                        _A. J. FRY._"

The message as delivered to appellee Neill, inclusive of print and manuscript (shown in italics), was as follows:

### "HALF-RATE MESSAGES.

THE WESTERN UNION TELEGRAPH COMPANY require that all messages received for transmission shall be written on the blanks of the company, under and subject to the conditions thereon, which conditions have been agreed to by the sender of the following HALF-RATE MESSAGE.

GEO. H. MUMFORD, Sec'y.                    WILLIAM ORTON, Pres't.

Dated *Seguin x 8 1878*

Received at *Austin May 9 1878*

To *Col A. Neill*

*Sold block four, five & six and have place for two thousand five hundred  Two Thousand down five hundred nine months   answer*

*A. J. FRY."*

The error occurred in substituting the word "have" for the word "home."

It is not contended but that the agent, Fry, knew of the above rules and regulations of the company in regard to sending their messages, and the difference between what is known as a full-rate or day message, and a half-rate or night message. Breese *v.* Tel. Co., 48 N. Y., 132.

Amongst other defenses relied upon are that the printed rules and regulations, accompanying the message as written and delivered to the company, constituted the contract between the parties, and that this should govern the question of the liability of the company and the amount to be recovered against it; that under the terms of the contract, this damage should be limited to the sum of $5, being ten times the amount paid the company, and could not include the sum of $1,750, for which the judgment below was rendered; and further, that appellee Neill was charged with notice of the ambiguity in the message as received by him, it appearing that there was a probable error in it, and that in order to hold the company liable, he should have had the message repeated, and thus in all probability have corrected the error and avoided the damage.

These general propositions bring up the principal questions believed to be necessary to the decision of the case as now before us.

In the application of the principles of law to the new and in-

tricate agency of telegraphy, it may reasonably be expected that mistakes and conflicting decisions would be made, until time, experience and reflection should settle the proper basis upon which this application should be made.

Whether or not telegraph companies should be held as common carriers, with all their common law liabilities, has been the subject of much discussion and conflicting decisions.

In many jurisdictions, their rights, duties and liabilities have been defined by statute, and thereby much of the difficulty has been solved; but where, as in this state, there has been no such legislation, and where it is comparatively a question of first impression, we must find the proper solution in such common law principles as are applicable, and in the decision of those courts in which, in our opinion, this application has been most appropriately and correctly made.

The great weight of authority, and which, from the nature of the employment of telegraph companies, seems founded upon reason, is, that though in some essential particulars they partake of the character of common carriers, they are not strictly such, and should not be held to the same degree of strict responsibility. Scott & Jarnagan's Law of Telegraphs, part 2, ch. 4; 2 Sedg. on Damages (7th ed.), 122, note c; 2 Redf. on Railways (4th ed.), 290; Cooley on Torts, 646; 2 Thomp. on Neg., 836, citing many authorities in note 3; Ellis v. Telegraph Co., 13 Allen, 233; Grinnell v. Tel. Co., 113 Mass., 301; Tel. Co. v. Carew, 15 Mich., 525; Birney v. Tel. Co., 18 Md., 358; Breese v. Tel. Co., 45 Barb., 274, reaffirmed, 48 N. Y., 132; Aiken v. Tel. Co., 5 S. C. (Rich.), 358.

As our legislature, however, has delegated to telegraph companies the power to exercise the right of eminent domain, and as their employment is *quasi* public, they should so far be governed by the law applicable to common carriers that the general duty devolves upon them to serve the public and act impartially and in good faith to all alike, and to send messages in the order received. But they are not, as is the general rule with common carriers, insurers, simply by reason of their occupation, but are held only to a reasonable degree of care and diligence in proportion to the degree of responsibility; and it follows that they have the right, in a proper manner and within a proper limitation, to restrict their liability for damages. Otherwise, as said by Lord Chief Justice Jervis, in MacAndrews v. Tel. Co., they "would become, what it is not pretended that they are, general insurers against loss arising from casualties over which they have no control." 17 C. B., 13; Breese v. Tel. Co., 48 N. Y., 132;

Ellis v. Tel. Co., 13 Mass., 233; Tel. Co. v. Gildersleeve, 29 Md., 246; Hibbard v. Tel. Co., 33 Wis., 565.

In accordance with these principles, and which have been often recognized by the legislative departments also, it may now be considered as settled law, that telegraph companies can, by express contract, or by proper rules and regulations, contained in printed notices or otherwise, and brought to the knowledge of those with whom they deal under such circumstances as to create an implied contract, limit their liability for delays and errors in transmitting and delivering messages, except when caused by the misconduct, fraud or want of due care on the part of the company, its servants or agents. In cases of this character, that exemption from liability cannot be claimed for such misconduct, fraud or want of due care, is a cardinal doctrine of the common law, which has become deeply rooted into our own jurisprudence, and the wisdom of which has received the sanction of ages: 2 Sedg. on Damages (7th ed.), 130; 2 Redf. on Railways (4th ed.), 290; 2 Thomp. on Neg., 839, § 4; Tel. Co. v. Carew, 15 Mich., 525; Ellis v. Tel. Co., 13 Allen, 226; Birney v. Tel. Co., 18 Md., 358; Tel. Co. v. Gildersleeve, 29 Md., 232; Breese v. Tel. Co., 45 Barb., 274, reaffirmed, 48 N. Y., 132; Camp v. Tel. Co., 1 Met. (Ky.), 164; Passmore v. Tel. Co., 78 Penn., 238; Aiken v. Tel. Co., 5 S. C. (Rich.), 358.

What rules and regulations are reasonable, and what are not, has given rise to many judicial decisions.

That they can so limit their liability in regard to night messages, which are more subject to delays from natural and other causes that would readily suggest themselves, would seem very reasonable, and particularly when the party who avails himself of that kind of message at a reduced rate, does so voluntarily in preference to what is known as a day message. We fail to perceive on principle why in such case the parties may not, as they did here, agree upon a sum certain in the nature of liquidated damages, for an error or delay arising from other cause than misconduct, fraud or the want of proper care as above shown. Aiken v. Tel. Co., 5 S. C. (Rich.), 358.

If the testimony, however, should show that the failure to properly transmit or deliver a message arose from such misconduct, fraud or want of due care, then it might be very seriously questioned, indeed, whether the same reasons of public policy which prohibit exemption from liability on these grounds, would not also prohibit a limitation upon the true amount of damages which should be recovered — telegraphic communication having now become almost a social as well as a commercial necessity, and the want of compet-

ing lines giving to the companies greatly the vantage ground over the public.

This question, however, is not necessary to the present appeal, and not having been fully argued by counsel, we do not make any decision upon it.

Bartlett v. Tel. Co., 62 Me., 209, was a suit for damages caused by an error in a night message, and was based upon the reasoning in the preceding case of True v. Tel. Co., 60 Me., 9, to the effect that the company could not, on grounds of public policy, claim a general and unlimited exemption from any and all liability beyond the sum paid, " from whatever cause occurring," not excepting even gross negligence or the want of the lowest degree of care. That this was in effect no contract at all, as the company was not bound either to transmit the message, to transmit it correctly, or to deliver it when transmitted; and that the agreement in case of failure, to simply repay the money received, was no sufficient consideration.

That the construction placed upon the contract in the case of True v. Tel. Co. was a strained one, is clearly shown in a comment upon that case, in Aiken v. Tel. Co., 5 S. C. (Rich.), 374; and in Grinnell v. Tel. Co., 113 Mass., 305, it is said by Gray, chief justice, that the opinion of the majority of the court in True v. Tel. Co., supra, appears to be founded on a false analogy between telegraph companies and common carriers, and is opposed in a very able dissenting opinion by Chief Justice Appleton.

We do not admit the correctness of the principle announced in the above case of Bartlett v. Tel. Co., 62 Me., 209, that if there is expressed in the contract an invalid ground upon which exemption is claimed by the company, that this taints the whole contract, and will render void other grounds therein contained which may be valid. Such has not been the rule in other courts of high standard. MacAndrews v. Tel. Co., 17 C. B., 12; Ellis v. Tel. Co., 13 Allen, 236; Passmore v. Tel. Co., 78 Penn., 245.

It is a well known rule of construction, that one part of a law may be unconstitutional and hence void, and another part valid, and we think the same principle would apply to a contract like the one under consideration.

The other cases of night messages which have come under our observation are generally those in which the company is sought to be held liable, not, as in the case now before the court, for an alleged error in the message, but for want of due care and diligence, either in not transmitting it at all, or in not delivering it in due time, and which would come within one of the exceptions before shown as

not constituting a sufficient ground of exemption.   Among the cases of night messages which come within the above designations may be mentioned the following: True *v.* Tel. Co., 60 Me., 9; Hibbard *v.* Tel. Co., 33 Wis., 559; Candee *v.* Tel. Co., 34 Wis., 471; Tel. Co. *v.* Fontaine, 58 Ga., 433, and the case cited by counsel for appellee decided by our court of appeals at the late Galveston term, Tel. Co. *v.* Weiting.

We are of opinion that the company had the right to make the limitation of their liability in regard to the night message under consideration, and that it was valid and binding to the extent to protect them from damages for an error in the transmission of the message, unless shown to have been occasioned by the misconduct, fraud or want of due care of itself, its servants or agents; and that, unless thus occasioned, the measure of damages is the price agreed upon — ten times the value of the sum paid to transmit the message.

We are further of opinion that the mere fact that there may have been an error in the message as received by the operator at Austin and delivered to appellee Neill, is not of itself sufficient proof of negligence to entitle the plaintiff to recover, as the error may reasonably be referred to some other cause, embraced within the exemption clause contained in the contract.   Aiken *v.* Tel. Co., 5 S. C. (Rich.), 367; Sweatland *v.* Tel. Co., 27 Iowa, 455; Tel. Co. *v.* Gildersleeve, 29 Md., 248.

Another regulation of telegraph companies, held to be reasonable by the great weight of authority, is the right to demand in a proper case, as a condition of liability, that the message be repeated at a reasonable cost.   2 Sedg. on Damages (7th ed.), 130; 2 Redf. on Railways, 290, sec. 17, note 15; 2 Thomp. on Neg., 841, sec. 6; Tel. Co. *v.* Carew, 15 Mich., 525; Ellis *v.* Tel. Co., 13 Allen, 226; Redpath *v.* Tel. Co., 112 Mass., 71; Grinnell *v.* Tel. Co., 113 Mass., 299; Wann *v.* Tel. Co., 37 Mo., 472; Breese *v.* Tel. Co., 45 Barb., 274, re-affirmed, 48 N. Y., 132; Camp *v.* Tel. Co., 1 Met. (Ky.), 164; Passmore *v.* Tel. Co., 78 Penn., 238; MacAndrews *v.* Tel. Co., 17 C. B., 3; S. C., 33 Eng. L. & Eq., 180.

The testimony of appellee Neill himself shows that upon the face of the message there was an ambiguity in the use of the word "have," which required an explanation, and that for this purpose he went to the office to have the message repeated.   That this was not done, however, for the reason that the operator said that it was correct as received by him.

This was before any damage had occurred, and when in all probability it might have been avoided by having the message repeated.

We are of the opinion that in an action *ex contractu* the failure

to comply with such stipulation, without sufficient excuse shown, would be such non-performance of an essential condition precedent as should exonerate the company from greater liability than that agreed upon; and further, that in such case it would not be a sufficient excuse that reliance had been placed upon the subsequent declarations of the operator, that the message was correct as received by him.   To permit this would be to allow the mere hearsay statements of an operator, whose business it was to send and receive messages, to subsequently vary the terms of a prior contract made by the principal, and this, too, not only without consideration, but by releasing the consideration agreed upon for the guaranty against error.   Tel. Co. *v.* Gildersleeve, 29 Md., 248; Grinnell *v.* Tel. Co., 113 Mass., 306, 307; Sweatland *v.* Tel. Co., 27 Iowa, 458; Aiken *v.* Tel. Co., 5 S. C. (Rich.), 377.

· We are further of opinion that in an action *ex delicto*, when, from the face of the message or otherwise, knowledge is brought home to the party to whom the message is sent that there is a probable error, that the failure to have the message repeated, when this can be done before the damage has occurred, would be such contributory negligence as should defeat his right to recover.

Passmore *v.* Tel. Co., 78 Penn., 238, was, like the case now under consideration, a suit for damages for an error in a message relating to the sale of land.   The message as received to be transmitted was as follows: "I *hold* the Tibb's tract for you; all will be right;" as delivered by the company, "I *sold* the Tibb's tract for you," etc. In that case it was held that the failure to have the message repeated was such contributory negligence as relieved the company from liability.

Beside, it is a salutary principle of law that every one, as far as practicable, should endeavor to avert the damage which may be occasioned to him by the wrongful act of another; that he should not suffer damages to accumulate, which, by reasonable exertion, he might have avoided.   1 Sedg. on Damages (7th ed.), 164, 165; Champion *v.* Vincent, 20 Tex., 816; Mathew *v.* Butler County, 28 Iowa, 253; R. Co. *v.* Rodgers, 24 Ind., 103; Heavilon *v.* Kramer, 31 Ind., 241; State of Mo. *ex rel.* Rice *v.* Powell, 44 Mo., 436.

Whether, under this principle, appellee Neill should not have sought to lessen the damage by instituting suit against his vendee, Johnson, to cancel his deed, on the ground of mistake, and, if necessary, have made the company a party to the suit, is worthy of serious consideration, but in regard to which we do not feel prepared to give an opinion.

That the notice accompanying the message in terms applied to

those sent east of the Mississippi river, should not, in our opinion, in the present case, prevent its application to one sent west of that river. That part of the notice was evidently a mere form, and its real essential requisites were agreed to by the parties, and hence would apply to the case under consideration.

As the cause was submitted to the court without the intervention of a jury, and as the record does not disclose any special findings of law or fact by the learned judge presiding, we are not advised of the particular ground upon which his judgment was based. As, however, it is evident that it must have been some view of the law inconsistent with this opinion, the judgment below is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered June 21, 1881.]