JOHN F. WOMACK v. THE W. U. TEL. Co.

(Case No. 1275.)

1. NOTICE. — One sending a telegraphic message is charged with notice of the printed conditions of the blank form on which his message is written.

2. TELEGRAM — NEGLIGENCE. — A telegram was written and delivered to a telegraph company at Marshall, Texas, to be sent to New York, as follows:

"S. M. SWENSON, SON & Co., 80 Wall Street, New York:

"If not already, close out my Decembers. Buy four hundred May deliveries. Answer.                                                   JOHN F. WOMACK."

The telegram was incorrectly transmitted by adding the letter "d" to the word "close," whereby the sender claimed to have suffered loss. No order was given by the sender to have the message repeated to guard against mistakes. In an action for damages against the company, *held,*

(1) The mere fact that the message received at New York differed as stated from that sent from Marshall was not of itself evidence of such negligence as to entitle plaintiff to recover a larger amount than the sum paid for the message.

(2) The sender who signed the message was bound to take notice of the printed terms thereon, which required it to be repeated in order to hold the company liable for any amount beyond the sum paid for the message. His ignorance of, or omission to read the printed form, cannot relieve him from being bound by his signature.

(3) This case distinguished from those in which printed forms were used in bills of lading, and other instruments signed, not by the shipper or sender, but the party to be bound.

3. TELEGRAPH COMPANIES. — Telegraph companies can, by express contract or by proper rules and regulations contained in printed notices or otherwise, and which are brought to the knowledge of those with whom they·deal under such circumstances as to create an implied contract, limit their liability for delays and errors in transmitting and delivering messages, except when caused by the misconduct, fraud or want of due care on the part of the company, its servants or agents.

APPEAL from Harrison.  Tried below before the Hon. A. J. Booty.

The opinion states the case.

*Geo. L. Hill,* for appellant.

I. The printed conditions upon the blank upon which the message was written are not binding upon the sender unless actual knowledge of the contents thereof are brought home to the sender. Railroad *v.* Harris, 12 Wall., 85; Shearman & Redfield on Neg., secs. 565–571; Telegraph Co. *v.* Blanchard, Williams & Co., by Supreme Court of Georgia, American Law Mag., p. 74; Telegraph Co. *v.* Weiting, Texas Court of Appeals; Telegraph Co. *v.* Neill, Texas Law Jour., October 20, 1881, p. 105; So Relle *v.* Telegraph Co., 55 Tex., 308.

II. The court is not permitted to charge upon the weight of evidence. Howerton *v.* Holt, 23 Tex., 51; Clark *v.* The State, 31 Tex., 574; Ross *v.* The State, 29 Tex., 499; Railroad *v.* Murphy, 46 Tex., 357; Pasch. Dig., art. 1464; R. S., art. 1317.

III. The jury are the sole judges of the facts and the weight to be given them. Railroad *v.* Murphy, 46 Tex., 357.

*Turner & Stuart,* for appellee.

Bonner, Associate Justice.— The appellant, John F. Womack, sued the defendant, the Western Union Telegraph Company, for damages for the failure to transmit correctly and deliver the following message:

"Blank No. 2

## "THE WESTERN UNION TELEGRAPH COMPANY.

"ALL MESSAGES TAKEN BY THIS COMPANY SUBJECT TO THE FOLLOWING TERMS:

"To guard against mistakes or delays, the sender of a message should order it REPEATED; that is, telegraphed back to the originating office for comparison. For this, one-half the regular rate is charged in addition. It is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any UNREPEATED message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any REPEATED message beyond fifty times the sum received for sending the same, unless specially insured; nor in any case for delays arising from unavoidable interruption in the working of its lines, or for errors in cipher

or obscure messages.  And this company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other company when necessary to reach its destination.

"Correctness in the transmission of messages to any point on the lines of this company can be INSURED by contract in writing, stating agreed amount of risk, and payment of premium thereon at the following rates, in addition to the usual charge for repeated messages, viz.: one per cent. for any distance not exceeding one thousand miles, and two per cent. for any greater distance.  No employee of the company is authorized to vary the foregoing.

"No responsibility regarding messages attaches to this company until the same are presented and accepted at one of its transmitting offices; and if a message is sent to such office by one of the company's messengers, he acts for that purpose as the agent of the sender.

"Messages will be delivered free within the established free delivery limits of the terminal office; for delivery at a greater distance a special charge will be made to cover the cost of such delivery.

"The company will not be liable for damages in any case where the claim is not presented in writing, within sixty days after sending the message.

"A. R. BREWER, Secretary.          NORVIN GREEN, President.

"MARSHALL, TEXAS, Nov. 10, 1879.

"Send the following message subject to the above terms, which are agreed to:

"To S. M. SWENSON, SON & Co., 80 Wall street, New York:

"If not already, close out my Decembers.  Buy four hundred May deliveries.  Answer.

"13, paid, $2.39.          JOHN F. WOMACK.

"☞ READ THE NOTICE AND AGREEMENT AT THE TOP."

The message was incorrectly transmitted in this, that the letter "d" was added to the word "close," making it closed, in consesequence of which Womack alleged that he suffered damages.  He paid for sending it to New York city, but failed to avail himself of the privilege to have it repeated.  He testified that he did not know the contents of the printed portion of the blank form upon which the message was sent, providing for repeating it to prevent mistakes; that he had never read the same.

The message was correctly sent from Marshall to Galveston; the mistake occurred between the latter place and St. Louis, but from what cause was not shown.

Under the charge of the court the jury returned a verdict upon which judgment was rendered in favor of appellant Womack for the sum of $2.85, the amount paid for sending the message, with interest, from which judgment this appeal is taken.

The assigned errors relate to the following propositions announced in the charge of the court:

1. That Womack must be charged with having had notice of the printed conditions upon the blank on which the message was written, and to have assented to the same.

2. That the mere fact that the message received at New York city differed from that sent from Marshall was not of itself evidence of negligence, such as to entitle the plaintiff to recover, this being a charge upon the weight of evidence.

3. That the contract in regard to which the message was sent, being one pertaining to cotton futures, was illegal and void, because against public policy, and that the plaintiff was under no legal obligation to pay the loss. This charge was objected to on the ground that this issue was an immaterial one as between the parties to this suit.

I. In the case of The Western Union Telegraph Company v. Andrew Neill, 57 Tex., 283, some of the questions arising in this case were very carefully considered by this court in the light of numerous authorities. As the result of these authorities, it was there said that "it may now be considered settled law that telegraph companies can, by express contract, or by proper rules and regulations contained in printed notices or otherwise, and brought to the knowledge of those with whom they deal, under such circumstances as to create an implied contract, limit their liability for delays and errors in transmitting and delivering messages, except when caused by the misconduct, fraud or want of due care on the part of the company, its servants or agents."

In that case it was not questioned but that the sender of the message had knowledge of the contents of the printed conditions accompanying it. In this, as before stated, Womack testified that he did not know their contents, and that he had never read them. Upon this issue, the question arises whether his failure to read these conditions excuses him from being held as charged with knowledge of their contents.

The sound and practical rule of law in such cases is, that, in the absence of fraud or imposition, a party to a contract, which has been voluntarily signed and executed by him, with full opportunity for information as to its contents, cannot avoid it on the ground of his own negligence or omission to read it.

The precise question was made and decided in Grinnell v. Tel. Co., 113 Mass., 301, 307, the regulations in that case having been printed in very small type, and not having been read or made known to the plaintiff. Chief Justice Gray, in delivering the opinion of the court, says that the plaintiff's omission to read the printed forms cannot relieve him from being bound by his signature.

In Tel. Co. v. Carew, 15 Mich., 536, the message was written upon one of the printed blanks of the company, containing certain conditions, but which the plaintiff had never read; neither had his attention been called to them. The court charged the jury that the plaintiff was not bound by the conditions on the back of the dispatch, unless his attention was called to them. Christiancy, J., delivering the opinion, says: "This printed matter on the face of the paper could hardly escape the attention of any one not naturally or purposely blind, who should write a message upon the paper. He must at least know that there is some printed matter on the face of the paper, and he must be held to know that it had been placed there for some purpose connected with the message. It is therefore no excuse for him to say he did not read the printed matter before his eyes. It was gross negligence on his part if he did not. The printed blank, before the message was written upon it, was a general proposition to all persons of the terms and conditions upon which messages would be sent. By writing the message under it, signing and delivering it for transmission, the plaintiff below accepted the proposition, and it became a contract upon those terms and conditions."

In support of the proposition above announced, we make the following additional citation of authorities: Red Path v. Tel. Co., 112 Mass., 73; Grace v. Adams, 100 Mass., 507; Rice v. Dwight, 2 Cush. (Mass.), 87.

It is believed that a majority, if not all the cases, in which a contrary doctrine has been held, are those in which the conditions were annexed to some instrument, as a bill of lading, ticket, etc., signed by the defendant only, and where the plaintiff was sought to be bound by its mere acceptance, though in the hurry of the moment he may not have known of the existence even of the conditions, and not in a case like the present, where the instrument was signed by the plaintiff himself.

II.. Was the charge of the court, that the mere fact that the message as received and delivered in New York city was different from that sent, was not of itself such sufficient evidence of negligence on the part of the company as to entitle plaintiff to recover damages, one upon the weight of testimony?

It will be remembered that Womack had failed to comply with the regulation of the company, and which became a part of their contract, that to avoid mistakes the message should have been repeated. That such a regulation is reasonable and proper has been frequently decided, and has been so held by this court. Tel. Co. *v.* Neill, *supra,* and the authorities there cited; to which many others could be added, including Catchpole *v.* Tel. Co., decided by our court of appeals, Tyler term, 1882.

These decisions are based upon the liability of such companies to mistakes by reason of the comparative infancy and novelty of the business in which they are engaged, and of the hidden and uncontrollable causes which may prevent a correct transmission of the message. Except, therefore, in cases where it is shown by direct testimony, or by the facts and circumstances of the case, that the mistake or omission happened, not from such cause, but by reason of the misconduct, fraud, or want of due care on the part of the company, its servants or agents, it will be presumed that it occurred from some casualty sought thus to be provided against, and the stipulated compensation becomes the measure of damages. Grinnell *v.* Tel. Co., 113 Mass., 299, in which the cases of Sweetland *v.* Tel. Co., 27 Iowa, and Tel. Co. *v.* Buchanan, 35 Ind., are commented upon.

It has been repeatedly decided, and such is the rule adopted by this court, that the mere fact that there may have been an error in the message as received, would not of itself be sufficient proof of negligence to entitle a plaintiff to recover, as the error may reasonably be attributed to some other cause. Tel. Co. *v.* Neill, *supra,* citing authorities, to which with others may be added that of Becker *v.* Tel. Co., Supreme Court of Nebraska, January, 1881.

Under these decisions, that such testimony, of itself, is not sufficient to maintain a suit for damages against the company, is a question of law as to the want of testimony, to be given in charge by the court, and not one of fact as to the sufficiency of the evidence, to be weighed by the jury. As a verdict for damages founded upon such testimony alone must be set aside, it would be but an idle ceremony to submit it to the jury in the first instance.

It is not intended, however, to lay it down as an arbitrary rule, that in no case would the mere fact, of itself, that the message, as delivered at the place of destination, was different from that ordered to be sent, would not authorize a charge upon the question of negligence. There might be such apparent omissions or perversions in a message as thus delivered, from the one ordered, as would indi-

cate such fraud or gross carelessness as would require that the question, as one of fact, should be submitted to the jury. But this strictness should not, under the authorities, be applied in a case like the present, where there was simply a mistake in one letter, and which might be consistent with a very high degree of skill and care.

The facts in this case would seem also to admit of the application of the salutary principle of law announced in case of Tel. Co. *v.* Neill, *supra*, that the plaintiff should have endeavored to have averted the damage which may have been occasioned by the mistake in the message; that he should not have suffered damages to have accumulated which he might reasonably have prevented. The testimony tends to prove, that afterwards, on the very same day that his dispatch should have reached Swenson, Son & Co., that he had notice that his December futures were not sold, and yet it does not appear that he had his message then repeated, or took other steps to prevent further loss.

Under the circumstances of the case as shown by the testimony, we are of opinion that the plaintiff was not entitled to any larger judgment than that obtained by him, and that the first and second assigned errors were not well taken.

III. Under the above view of this case, we may dispense with the decision of the third question presented, that the court erred in instructing the jury that the contract, being one known as cotton futures, was null and void; and particularly as the question is not directly made between the parties themselves to the contract. We do not, however, by any means intend to intimate, that, in our opinion, such a contract, which in its essential features partakes of a mere gambling transaction, and which has a very pernicious tendency in its effects, both upon the morals of the country and the interests of legitimate trade, by inducing undue fluctuations in the market, arising, not from the natural cause of supply and demand, but from a false and fictitious cause, will ever lightly be sanctioned by this court.

There being no error in the judgment below, the same is affirmed.

AFFIRMED.