# Western Union Telegraph Co.
## v.
## William C. Wright.

Mistake in telegraph message—Negligence.—Where a  commission house sent to a cattle dealer a telegraph message giving the price at which certain cattle had been sold, which was erroneously transmitted by the company, and after the cattle dealer received the message and before he purchased the cattle, he was told how much the cattle had really sold for.

*Held,* that under the circumstances he was guilty of contributory negligence in not assuring himself, by repetition of the message or otherwise, of its correctness, before purchasing.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding. Opinion filed February 17, 1886.

This action was case, brought by appellee, Wright, against the appellant telegraph company, to recover damages alleged to have been sustained by the former, by reason of negligence of the latter, in transmitting, May 31, 1883, a certain telegraph message, which was given by the agents of the plaintiff to an agent of the defendant at its office at the Union Stock Yards, near the city of Chicago, to be sent to the plaintiff at a place called Colorado, in the State of Texas, where the plaintiff then was, and which said message was materially altered when received by the plaintiff. On the trial plaintiff had judgment for $666 and defendant brings the record here for revision. All the evidence is preserved by bill of exceptions, and as to none of the material facts is there any conflict.

It appears that at the time aforesaid and for several years prior thereto, plaintiff had been engaged in buying cattle in Texas, a portion of which he shipped to said Union Stock Yards, consigned to Bensley, Wagner & Bensley, commission merchants, to sell for him on commission; that during the month of May, 1883, one Peacock had shipped a lot of grass-fed cattle from Colorado aforesaid, consigned for sale to another firm of commission merchants at said Union Stock Yards; that said lot, belonging to Peacock, had been sold in the market at said stock yards just before May 31, 1883; that plaintiff being about to buy at or near Colorado aforesaid, a lot of similar cattle to send to said stock yards for sale, and being desirous of knowing what the Peacock cattle brought, made arrangements with Bensley, Wagner & Bensley to inform him by telegraph; that defendant, having a telegraphic line from the stock yards to Colorado aforesaid, Bensley, Wagner & Bensley, May 31, 1883, wrote and thus delivered to defendant's operator, at said stock yards, this message:

"To W. C. Wright, Colorado, Texas: Peacock cattle sold four-eighty, average nine hundred sixty-six, receipts moderate.

"B. W. & B."

That when the message was received by plaintiff at Colorado, instead of saying that the Peacock cattle sold for four-eighty, it read five-eighty; that plaintiff soon after receiving this message bought 140 head of cattle, paying $40 a head, shipped them to B. W. & B., at said Union Stock Yards, for sale; that three head died in the transit and the rest were sold at a loss of about the amount of the verdict. But the plaintiff, who was a witness in his own behalf, testified that he had no knowledge or information at the time of receiving said message or dispatch, but that it was correct; that at the time of buying said cattle he had heard it on the streets that they had not sold for as much as quoted in the message to him. He was then asked to state when he first obtained knowledge or information concerning the correctness of said telegram, and answered, "I do not remember when I first obtained such knowledge, but it was between the time of receiving said message, telegram or dispatch, and the purchase of said cattle." Then again, speaking about the message in question and the Peacock cattle, he says: "Nor did I receive any information with reference to the facts or subject-matter contained in said message except what I heard on the streets. I heard that said cattle sold for one dollar per hundred pounds less than my message stated." The plaintiff made no attempt in his testimony to show that the sources of his information were of such a character as ought not to influence a reasonable person to suspect a mistake in the message, and induce him to take proper precautions to ascertain before acting upon it as to its correctness; or that he took any precautions for that purpose.

Messrs. Williams & Thompson, for appellant.

Mr. Charles W. Needham and Mr. Louis Munson, for appellee.

McALLISTER, J.    We are of opinion that from the plaintiff's own testimony he was guilty of such contributory negligence as should, unexplained, defeat his right of action.    He testified that after the altered telegram was received by him, but before he purchased any cattle, he was informed of the mistake in the telegram, and that the Peacock cattle sold in fact for one dollar less per hundred pounds than said telegram stated, which was the truth.    It is true he states that he received that information on one of the streets of Colorado.    But that being the place from which the Peacock cattle had been shipped, it is not unreasonable that there should have been some person there who was interested in knowing, and who did know, just the price they had been sold for.    The plaintiff, in his evidence, characterized that information as knowledge.    It was sufficient to give him a reasonable cause to suspect that there was a mistake in the telegram he had received purporting to state the price at which the Peacock cattle had been sold; then it was clearly his duty before acting upon that message or telegram, to assure himself by repetition of the message or otherwise, of its correctness, and if, without doing so, he acted upon it, he was guilty of contributory negligence which defeats his right of action.    Gray's Com. by Tel. § 76; Western U. Tel. Co. v. Neill, 57 Texas, 283.

The plaintiff, although admitting the fact of receiving such information, does not attempt to state any fact or circumstance in connection with it which could have any tendency to derogate from the force and effect of it, or to show that he used any precautions whatever with a view of ascertaining the correctness of the telegram upon which he professes to have acted.

From his conduct we should infer that he acted upon the presumption that the defendant stood as guarantor of the correctness of the telegram he had received.    In that he was mistaken.    The judgment must be reversed and the cause remanded.

Judgment reversed.