WESTERN UNION TELEGRAPH CO. v. JOHN M. HARPER.

Delivered December 17, 1896.

**1.  Telegraph Company—Mistake in Transmitting Message—Negligence.**
   Where the language of a telegraph message is altered in the course of transmission, the fact of error is prima facie evidence of negligence on the part of the telegraph company.

**2.  Same—Same—Negligence of Sender.**
   Where a telegraph company makes an error in the transmission of a message, but the addressee immediately sends a reply which informs the sender of the error that has occurred in time for it to be corrected, but the sender does not correct the error for the reason that he does not notice it, on account of a failure to read the reply carefully, he cannot recover damages occasioned thereby.

**3.  Same—Transaction Against Public Policy.**
   The courts will not sustain an action against a telegraph company, where the alleged damages occurred in the transmission of a message relative to a deal in cotton futures, which is against public policy.

APPEAL from Marion.   Tried below before Hon. J. A. ARMSTEAD.

*M. R. Geer*, for appellant.—1.   The mistake or change in the message of the word "hundred" to "thousand" was not sufficient evidence of negligence to authorize a verdict for Harper.   57 Texas, 285; 58 Texas, 176; 27 S. W. Rep., 219; 7 Texas Civ. App., 482; 17 Am. Rep., 69; 112 Mass., 71; 18 Fed. Rep., 717; 11 Neb., 87; 5 S. C., 358; 13 Allen (Mass.), 226; 14 Fed. Rep., 717; 113 Mass., 299; 154 U. S., 1.

2.   If Harper knew that 1000 bales of cotton had been purchased, and did not within a reasonable time take steps to correct said purchase or to resell the 900 excess bales, he cannot recover.   58 Texas, 181; 60 Texas, 202; 6 Wall., 230.

*R. R. Taylor*, for appellee.—1.   The mistake or change in the message of the word "hundred" to "thousand" was sufficient evidence of negligence to authorize a verdict for appellee.   When a message is shown to have been transmitted and delivered changed from the words in which it was received, the company is prima facie negligent, and must show by evidence the circumstances of excuse or justification. Telegraph Co. v. Edsall, 63 Texas, 668; Telegraph Co. v. Neill, 57 Texas, 283; Marr v. Telegraph Co., 3 S. W. Rep., 496; Telegraph Co. v. Crall, 7 S. W. Rep., 653.

2.   A contract for the purchase and sale of cotton for future delivery, in the absence of a special agreement between the parties to the effect that such cotton is not to be delivered, is a binding contract, and the same is not a gambling transaction and contrary to public policy and void.   Burr v. Davis, 27 S. W. Rep., 589.

GARRETT, CHIEF JUSTICE.—This action was brought by John M. Harper, the appellee, against the Western Union Telegraph Company,

to recover damages alleged to have been sustained by appellee by reason of a mistake which occurred in a telegram sent for him by the appellant to Pinckard & Meyer of New Orleans, Louisiana. The message was delivered to the company for transmission on April 30, 1894, and then read: "Too much rain for cotton. Buy one hundred June." It was written on a blank furnished by the company and appellee agreed that it should be sent subject to the terms on the back thereof, among which appeared the following: "To guard against mistakes or delays, the sender of a message should order it repeated; that is, telegraphed back to the originating office for comparison. For this one-half of the original rate is charged in addition. It is agreed between the sender of the following message and the company that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery of any unrepeated message, beyond the amount received for sending the same," etc.

The message was an unrepeated message. It was delivered by the appellant to Pinckard & Meyer, reading: "Too much rain for cotton. Buy one thousand June." Acting upon the message, Pinckard & Meyer bought on April 30 for appellee, for June delivery, 1000 bales of cotton instead of 100 bales, and on the same day sent appellee a message, which he received at 2:30 o'clock p. m. of that day, advising him: "Bought ten June six, ninety-one. Market steady." The word "ten" meant ten hundred bales of cotton. Pinckard & Meyer followed this message with a letter advising appellee that they had bought 1000 bales. Appellee received the letter in the afternoon of May 1. At 5:45 p. m., May 1, he sent Pinckard & Meyer a night message, which was delivered to them on May 2, reading: "Sell to cover thirteen June, and sell one September short." And on May 2 at 9:36 a. m. he received the following reply: "Sold seven June six eighty-two. Sold six June six eighty-one. Sold one September six ninety-two." Cotton advanced on April 30, after appellee's purchase, but after noon on May 1 it began to fall, and, as appears from Pinckard & Meyer's dispatch, they sold on May 2 at a loss to appellee. No explanation was offered by the appellant as to how the mistake in the original message occurred.

The right of a telegraph company by contract to limit its liability for damages caused by errors in the transmission of messages, except where they are shown to have occurred through the negligence of the company, its servants or agents, is recognized in this State. Telegraph Co. v. Neill, 57 Texas, 285; Telegraph Co. v. Womack, 58 Texas, 176. There being no other evidence at the trial of this case below that the error in the message was caused by the negligence of the appellant than the change itself from the word "hundred" to "thousand," the appellant insists that the evidence was insufficient to sustain the verdict. It has been held, however, that the fact of the error in the message is prima facie evidence of negligence, and puts the burden upon the company of showing that the error resulted from some excusable cause. Telegraph Co. v. Edsall, 63 Texas, 668; Telegraph Co. v. Hearne, 77 Texas, 83.

There was consequently no error in the refusal of the trial court to instruct the jury to return a verdict for the appellant, on account of the insufficiency of the evidence to show negligence on its part in the transmission of the message. Appellee delivered the message to the appellant written in the words in which he desired it to be transmitted. When delivered, the face of the message showed that an error had been made. The message was handled by the agents and servants of the company, and they alone should know how the mistake occurred; but not a word of evidence was offered in explanation.

But the judgment of the court below should be reversed for other reasons urged by the appellant. Appellee received the telegram from Pinkard & Meyer on the same day that he directed the one hundred bales of cotton to be bought, advising him that they had purchased for him one thousand bales, in sufficient time to have corrected the error and prevented damage; but, instead of acting promptly, he did not order the cotton sold until the morning of May 2, that is, by a night dispatch sent in the afternoon of May 1, to be delivered on the morning of May 2. His explanation of this delay was that he did not read the telegram received April 30 carefully, but only noticed the price at which the cotton was bought. His failure to read carefully the telegram, from which he would have seen at once that an error had been made, was an act on his part which, taken in connection with other circumstances in the case, showed negligence without which the damages claimed would not have followed. Cotton advanced after his purchase of April 30, and until 12 m. on May 1, at which time he could have sold at a profit.

Again, from the testimony of Meyer and the appellee himself, and the dealings between them as shown by a course of four years' duration, during which there had never been any actual delivery of cotton bought or sold by the appellee, it clearly appears that the transaction involved in this case was, as is commonly called, a dealing in "futures," such as has been repeatedly held to be against public policy, and with which the courts will have nothing to do. It is true that Harper testified that he could not tell what his intention was in this particular transaction, as to whether he would take the 100 bales of cotton or settle by paying or receiving the difference in the market price, but he stated that he had bought and sold as many as 100 different lots of cotton in the New Orleans Exchange and had never received or delivered any cotton so bought or sold; that he had had as many as 50 cotton transactions with Pinckard & Meyer. Meyer testified that Harper had been a client of his firm for the last four years, and that they had executed many cotton contracts for him; that all of his contracts were settled by paying the difference in cash; this difference was arrived at by the price named in the contract and the price of cotton for the same month as it existed on the day the contract was closed out, or the price of cotton as shown by the last day of the month for which the purchase was made; they had never made or received any cotton deliveries for him. He added that his firm did not understand this to be a future deal, but the testimony

of both himself and Harper, showing their whole course of dealing and the particular facts of this transaction, which was closed in the same way that all the others had been closed, show that it was.

We do not decide as to whether or not it was necessary for the appellee, in order to hold the appellant liable for the damages claimed, to tender to the company the excess of cotton purchased upon the erroneous message. There is nothing in the contention that the sale of the excess of cotton should have been made in a separate transaction and not mixed in a sale with other cotton, in order to hold the appellant for the difference in price.

For the reasons stated, the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*