THE WESTERN UNION TELEGRAPH COMPANY v. HENRY A. LINN.

No. 116.

**1. Negligence, Stipulations Against.**

A telegraph company can not impose terms upon its patrons relieving itself from liability for negligence of its servants in failing to deliver messages with reasonable diligence.................................... 11

**2. Notice—Telegram.**

A dispatch, " Grace is very low; can you come and bring Maud ?" signed " Kate," was on its face sufficient to notify the telegraph company that the plaintiff (the addressee) had a serious interest in the condition of " Grace," and of relationship of the parties named to each other ......................................................... 11

**3. Damages—Breach of Contract.**

Adhering to the rule in Hadley v. Baxendale, 9 Exchequer, 341, the court adds: " It is not necessary that the injurious result will surely follow from the breach of contract or tortious act, but it must be such as might be anticipated as a probable consequence thereof." ............ 12

**4. Notice from Words of Telegram.**

While the words of the dispatch charged the telegraph company with knowledge of the serious illness of the party named as ill, and of relationship of the parties. they did not charge it with knowledge of the death of Grace, or that she had a husband who probably would have delayed the funeral until plaintiff's arrival. Damages for result of these causes (distress for not being able to attend the funeral, etc.,) can not be regarded as contemplated by the parties, looking only to the face of the dispatch ........................................... 13

**5. Postponement of Funeral.**

Mental anguish followed inability to attend funeral of a relative. The telegraph company had been negligent in delivering a dispatch announcing the serious illness of the deceased. Plaintiff could not have attended the funeral had the delivery been prompt, and it was insisted that a postponement could have been secured until such time as the addressee could have arrived. *Held*, that damages for failure to secure a postponement of the funeral were too remote, and could not be considered as in contemplation of the parties, from the face of the dispatch ......................................................... 13

ERROR to Court of Civil Appeals for Third District, in an appeal from Travis County.

*Walton, Hill & Walton*, for plaintiff in error.—1. This case, if sustained, carries the doctrine of deductive or constructive notice and contingent causality far beyond what has been done in any reported case.

We are not arguing that under the reported cases the language of the message was not sufficient to put the telegraph company upon notice of the relationship existing between the parties named in it, and that a failure to deliver it promptly might prevent the addressee from seeing his

sister; and it may be the cases go so far as to hold that the contingency of the sister's death will be deemed to have been within contemplation of the contracting parties.

We suggest, however, as to this, that in neither of the cases of Telegraph Company v. Feegles, 75 Texas, 537, and Telegraph Company v. Moore, 76 Texas, 66, relied on by the Court of Civil Appeals for its judgment, was the question here presented actually made; that is, that the object of the message was to give the beneficiary the position of presence at the sick bed of a living person, whereas the damages sought are for failure to occupy a position not contemplated, viz., presence at the funeral.

2. The more serious objection, however, is to the next step in the doctrine of constructive or deductive notice, viz., that after being held to contemplate the sick person's death, and consequently charged with notice of her death long before it had transmitted and delivered the message, that it should be held to contemplate not the ordinary but the extraordinary series of events necessary as links in the attenuated chain of causality to make the damages recoverable as the direct result of its negligence. We submit that it must be held that the company contemplated (according to allegations of petition) that the person named as " very low " had a husband (Valls), and that Linn would wire this unnamed relative, and secure not the usual and ordinary time of burial but an extraordinary act of postponement of burial. If as held in the cases of Kirkpatrick (76 Texas, 217) and Carter (85 Texas, 580) and Kerr (23 Southwestern Reporter, 564), the telegraph company is not charged with notice that the named sick person had the unnamed husband or wife, how can such unnamed and unknown relatives' acts become factors in the chain of causalities with which the company is sought to be charged? Again: If the message in the Carter case (85 Texas) was not sufficient to charge the company with the contingent result of a burial in a wrong place, and consequent exhumation, how can the same system of jurisprudence affect the company in this case with contemplation of the contingency of a postponed funeral?

We beg that it be kept in mind that the chain of events is completely broken, unless these two links are used; that is, to have contemplated the results for which damages are sought the telegraph company must have contemplated that the deceased person had the unnamed husband, and that the telegraphic correspondence between " Kate " and the addressee, Linn, would be changed, and Linn would wire the unknown kinsman and secure the extraordinary fact of postponement of burial twenty-four hours later than under ordinary circumstances it would and did occur.

Let us follow the doctrine of notice to its logical consequence; thus: the company knew constructively that the sick person died on the morning of January 25, and that the usual and ordinary result would be burial

(when it occurred) next day. It also knew constructively that it was impossible for the addressee of the message to arrive by the means of travel as set up in time to attend the funeral.

The cases of Martin, 1 White & Willson's Civil Cases, 143, which cites Sheffield's case, 71 Texas, 570, and Parks v. Telegraph Company, 13 California, 422, are not analogous, because in them the acts of others involved are such as the law presumed would take place; that is, that officers would do their accustomed duties. In the Martin case the parties whose acts were involved, except those directed by course of law, were named in the message. In the Sheffield case the questions here raised were not passed upon. That parties contracting are not supposed to consider existing or contemplated transactions of other persons, see 5 American and English Encyclopedia of Law, 14, note 1; also Sutherland on Damages, 124.

This principle is held and exemplified also in Watkins v. Junker, 4 Texas Civil Appeals, 629. We also refer the court to the case of Ikard v. Telegraph Company, 22 Southwestern Reporter, 534, where it is held, that the contingency of expediting a funeral by a day, although necessary, was not within legal contemplation of parties. The basic principle is the same as that for which we are contending in this case. The two courts have thus held differently on the same question.

*George F. Pendexter*, for defendant in error.

BROWN, ASSOCIATE JUSTICE.—H. A. Linn sued the telegraph company to recover damages for mental suffering alleged to have been caused to him by the negligent failure to deliver in a reasonable time the following message, which was delivered to the agent of defendant at Benevides, Texas, January 5, 1891, for transmission:

"BENAVIDES, TEXAS, January 26.

" *To H. A. Linn, 1607 Lavaca, Austin:*

"Grace is very low. Can you come and bring Maude?
　　　　　[Signed] "KATE."

Petition alleged that Grace was a sister to plaintiff, and that she died on the same day that the message was delivered to defendant's agent at Benavides. That "Kate" and "Maude" were also sisters to the plaintiff. That the message was received by defendant's agent at Austin over its wires at 6:30 p. m. on the day of its date, but was not delivered until the next day, the 26th, at 9 o'clock a. m., and soon after receiving the said message he received from defendant another message informing him of his sister Grace's death, when realizing that it was too late to reach Benavides in time for the funeral, he sent a message informing the family that the message was received too late for him to attend. The petition contained allegations sufficient to show the negligence of the defendant,

and also the following specific allegations upon which the questions involved in the demurrer arise:

" Plaintiff avers, that if defendant had promptly delivered said message to him on the day it was received, as was its duty to do, that plaintiff would have at once sent a reply thereto, notifying his said sister Kate and his brother-in-law, the husband of said Grace, of his intention to leave Austin on the morning of January 26, 1891, for the purpose of visiting his said sister Grace, which he avers that he would have done but for the negligence and carelessness of the defendant as above set forth.

"And plaintiff avers, that had said message been promptly delivered to him, he could and would have left Austin on the morning of January 26, 1891, and would have reached Benavides by 11 o'clock on the morning of January 27, 1891. That his said sister Grace was buried at 4:30 o'clock on January 26, 1891, but that if said telegram had been promptly delivered to him by the defendant, so that he would have the opportunity of replying thereto on January 25, and of announcing his intention of a visit to his said sister in response to said telegram, that the burial of said Grace would have been deferred until the afternoon of January 27, 1891, to enable plaintiff to be present thereat.

" Plaintiff further avers, that the train leaving Austin on January 26, 1891, upon which he would have travelled to Benavides, departed before the delivery of said telegram to him by defendant, and that no other train left Austin upon which he could have made the trip, until the morning of January 27, so that after the receipt of said telegram by plaintiff it was impossible for him to reach Benavides until about 11 o'clock a. m. of January 28, 1891, to which time plaintiff avers it was impossible to defer the burial of his said sister.

" Plaintiff avers, that but one train left the city of Austin on January 26, 1891, upon which it was possible for him to make direct connection with other lines of railroad running between said city and the town of Benavides.

" So plaintiff avers, that on the delivery of the said telegram to him and on the receipt of another telegram within one hour thereafter, informing him of the death of his said sister Grace, he realized that owing to the negligence of the defendant in failing to deliver said first described telegram, that it would be impossible for him to reach Benavides in time to attend the funeral of his said sister.

" Plaintiff further avers, that the said Grace was his eldest sister, and that the strongest feelings of love and affections had always existed between them, and that plaintiff suffered great mental pain and disappointment at not being able to attend her burial, as he would have done had the defendant promptly delivered the message sent him by his sister Kate aforesaid."

The defendant filed a general demurrer to the amended petition, and also six special exceptions, in which the matter of objection is presented in different forms, but are in substance, first, that the message did not notify defendant of the relationship between plaintiff and " Grace," the person reported therein to be very low, or that there was any relationship existing between them; second, that the damages claimed are not such as the parties are deemed to have contemplated when the contract was made, or that might have been foreseen as the probable result of a breach of the contract, and that the injury alleged is not the proximate result of the negligence alleged.

Defendant also pleaded specially, that the contract entered into for sending the message contained this clause, "It is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in the transmission or delivery of any unrepeated message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same." Plaintiff excepted to the special answer of defendant, because it could not by contract defeat a recovery for the negligence of its servants in not delivering the message within a reasonable time, and the said plea constituted no defense to this suit. The court sustained the plaintiff's exceptions to the answer, and overruled the defendant's demurrer and exceptions to the plaintiff's petition.

Upon trial, judgment was given for plaintiff against the defendant, from which appeal was taken, and the Court of Civil Appeals affirmed the judgment of the District Court.

The court properly sustained the plaintiff's exceptions to the defendant's special answer; such stipulation in the contract could not afford protection to the defendant against the negligence of its servants in failing to deliver the message with reasonable diligence. Thomp. on Elec., sec. 228; Tel. Co. v. Wilson, 69 Texas, 742.

There was no error in the judgment of the court overruling the third exception of the defendant, to the effect that the terms of the message were not sufficient to notify defendant of the relationship between the plaintiff and " Grace." The terms of the message were sufficient to notify the defendant that plaintiff had a serious interest in the condition of " Grace," and if there were any reasons why it desired to know more particularly the relationship, it was its duty to make inquiry, and not the duty of the sender to communicate them in the first place. Tel. Co. v. Adams, 75 Texas, 531; Tel. Co. v. Moore, 76 Texas, 66.

The damages for which a telegraph company will be held liable upon failure to transmit and deliver a message with proper diligence, when the message concerns sickness or death, must be ascertained by applying the rules which govern in cases of breaches of other contracts; and if regarded as a tort, like rules must be applied as are applicable to other torts. The

leading case of Hadley v. Baxendale, 9 Exchequer, 341, laid down the general rule as to breaches of contracts in this comprehensive language: " When two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such · breach of contract should be such as may fairly and reasonably be considered as arising naturally and according to the usual course of things from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of it."

The form of expression by which courts have applied this rule to a given state of facts has varied according to the particular facts of the case under consideration, but all of the essential elements of the rule above expressed are to be found in subsequent cases upon the subject. The general doctrine has been applied by this court in many cases, as in De la Zerda v. Korn, 25 Texas Supplement, 194, where it is said, that where there is no element "of willful wrong or gross negligence, remuneration must be restricted to the immediate consequences of the wrongful act."

As applied to this character of case, this court expressed the general doctrine thus: "In case of tort the rule is, the wrongdoer shall be answerable for all the injurious consequences of his tortious act, which according to the usual course of events and general experience were likely to ensue, and which therefore, when the act was committed, he may reasonably be supposed to have foreseen and anticipated. McAllen v. Tel. Co., 70 Texas, 245.

It is not necessary that the injurious result will certainly follow from the breach of contract or tortious act, but it must be such as might be anticipated as .a probable consequence thereof. The party who does a wrongful act or fails to perform a contract is not liable for the act of a third person which is not the natural result of such wrongful act or breach of contract. "To maintain an action for special damages, they must appear to be the legal and natural consequences arising from the tort, and not from the wrongful act of a third person remotely induced thereby." Crain v. Petrie, 6 Hill, 522; Lowery v. Tel. Co., 60 N. Y., 203.

Nor will a telegraph company be held liable for results that might have been avoided by action to be taken by the party himself or some third person, unless such action is called for as a natural consequence of the information contained, and the action such as in the course of events would naturally follow upon the information given by the message. Lowery v. Tel. Co., supra; Smith v. Tel. Co., 83 Ky., 57.

The language of the message was sufficient to notify the telegraph company that " Grace " was related to the plaintiff, and of the consequences to plaintiff of a failure to deliver it. The conclusion to be drawn was,

that there was a near relationship between the person mentioned in the message and the person addressed, and that upon its receipt he would set out to attend her in her sickness. Tel. Co. v. Moore, 76 Texas, 68. And it also notified the defendant company that the person mentioned might die, and that plaintiff might by a failure to deliver the message be deprived of being present at her funeral. The message called for an answer as to whether or not plaintiff could come. It might on the same principles be held that from this the telegraph company would be required to take notice that he would probably answer that he could come.

Looking at the message from the standpoint of the company, could it be understood that " Grace," who was then living, would die before the message was delivered, and that upon receipt of the answer that plaintiff was on the way, the husband of " Grace," who was not known to the defendant, so far as the petition shows, would postpone the funeral until the arrival of the plaintiff ? The postponement depended upon the death of the sister before arrival of plaintiff, which was uncertain; upon the answer that he would come, which depended upon his own will and his surroundings; upon the conditions surrounding the parties and the condition of the body and the weather, which were alike unknown and uncertain; and lastly upon the determination of the husband, who was unknown, and the result of whose conclusions upon the subject were not indicated in the language of the message itself.

Before the first message, the one sued upon, was delivered to plaintiff, another was delivered to its agent at the same office, announcing the death of Grace. This could not affect the liability under the first. If it be granted that the company was affected with notice of the death before delivery of the first message by the delivery to its agent of the second, it appears from the petition that if the message had been delivered in due time plaintiff could not have arrived there in time for the funeral, which occurred on the next day, and there was nothing in the second message, so far as shown, suggesting a postponement of the funeral until his arrival.

In any event the damages claimed are not the proximate result of the failure to deliver the message, and are therefore too remote to constitute a cause of action under the well settled principles of the law.

In Telegraph Company v. Sheffield, 71 Texas, 570, information was conveyed and action suggested by the party addressed; the action suggested was such as in the course of business a prudent man would take, and the probable result of a failure to deliver the telegram was that the debt might be lost.

In Parks v. Telegraph Company, 13 California, 422, information was given to an agent upon which to act, and instruction given as to the action desired. The probable result was that a failure to deliver the mes-

sage would be that the attachment would not be sued out, and the debt thereby be lost.

In both of these cases the persons who were to perform the acts and the thing to be done were plainly indicated. It would reasonably appear to any prudent man that a man addressed thus would promptly look after his debt, and that an agent thus informed and instructed would obey the instructions.

The District Court erred in not sustaining the demurrer and exceptions, either of which were sufficient; and the Court of Civil Appeals erred in not reversing the judgment of the District Court because of that error.

The conclusion at which we have arrived upon the exceptions and demurrer to the petition of plaintiff renders it unnecessary to consider the other assignments of error in this case.

From the allegations in plaintiff's petition and the evidence in the case, it is evident that the plaintiff can not so amend his petition as to state a good cause of action, and it becomes the duty of this court to enter such judgment as the District Court should have entered. It is therefore ordered, that the judgments of the District Court and the Court of Civil Appeals be reversed, and that the plaintiff's petition be dismissed, and that the plaintiff in error recover of the defendant in error all costs in this case in all the courts.

*Reversed and dismissed.*

Delivered April 26, 1894.

*Warren W. Moore* filed motion for rehearing, which was refused.