## WESTERN UNION TELEGRAPH COMPANY V. REEVES & McGLASSON.

### No. 419.

**1. Telegraph Company—Evidence.**—In an action against a telegraph company for damages for delay in transmitting a message, evidence is admissible to show that after the message had been sent the sender repeatedly called at the office of the company to inquire about its delivery and suggested that the message be repeated, and was told by the agent that it had gone through all right.

**2. Same.**—It was not error to exclude a copy of certain items taken down in its log-book as to the condition of the wires over which the message sued on was transmitted, when the original was shown to have been in its possession, and it failed to properly account for it, and when the testimony of its chief operator as to the condition of such wires was received and considered.

**3. Unrepeated Message—Waiver.**—A provision in a telegraph message relieving the company from liability, beyond the costs of transmission, for mistakes or delays in the transmission of unrepeated messages, is waived if the sender, sometime after sending the message and after repeated visits to the office of the company for a reply, propose that the message be repeated, and be told by the agent of the company that repeating the message was useless, as the message had gone through all right.

**4. Negligence—Fact Case.**—See opinion for facts held to constitute negligence on the part of the company in failing to transmit and deliver a message.

APPEAL from the County Court of Grayson. Tried below before Hon. E. P. GREGG.

*Field & Homan,* for appellant.—1. The declarations of the agent made after the message had been transmitted, and not in connection with its acceptance or transmission, are not competent against his principal, the defendant company. Railway v. Garrett, 52 Texas, 133; Gray's Com. by Tel., sec. 137; Thomp. on Elec., sec. 458; Abb. Trial Ev., sec. 51; Bank v. Bank, 60 N. Y., 278; Grinnell v. Tel. Co., 113 Mass., 299, 307; Tel. Co. v. Gildersleeve, 29 Md., 232; Robinson v. Railway, 7 Gray (Mass.), 92; Moore v. Kennedy, 81 Texas, 144; Mow. and Reap. Mach. Co. v. Pearson, 19 N. Y., 485; Van Doren v. Bailey (Minn.), 51 N. W. Rep., 375.

2. The suit being for delay both in the transmission and delivery of the message, and defendant having pleaded the general denial, and that the delay in delivery was caused by an error in transmission without fault of defendant, proof that the wires were being constantly interrupted from causes over which defendant had no control, and that delay in transmission was caused by a rush of business in defendant's Dallas office, was competent and pertinent to the issues, and the log-book kept in the Dallas office being shown to have been destroyed, or to be beyond the jurisdiction of the court, it was competent to prove the entries in the log-book by the person who made them. Railway v. Gernon, 19 S. W. Rep., 461; McDonnell v. Ford, 87 Mich., 198.

3. The verbal statement by the agent at Paris, made after the message had been transmitted, could not vary the written contract between

the company and the sender of the message, nor operate as a waiver of any of the terms of said contract. Sayles' Ann. Stats., art. 2245, rule 20; Railway v. Sherwood, 19 S. W. Rep., 455; 3 Ct. App. C. C., sec. 221.

4. Under the special contract for the transmission and delivery of the message sued on, the telegraph company is not liable on account of errors in the transmission for an amount greater than the tolls paid for transmission, unless it be shown by direct testimony, or by the circumstances of the case, that such error was caused by misconduct, fraud, or a want of due care on the part of defendant or its agent. Tel. Co. v. Neill, 57 Texas, 283; Womack v. Tel. Co., 58 Texas, 176; Tel. Co. v. Edsall, 63 Texas, 668; Tel. Co. v. Hearne, 77 Texas, 83; Gray Com. by Tel., sec. 30; Redpath v. Tel. Co., 112 Mass., 71; Camp v. Tel. Co., 1 Metc. (Ky.), 164; Wann v. Tel. Co., 37 Mo., 432; Ellis v. Tel. Co., 13 Allen (Mass.), 226; Tel. Co. v. Carew, 15 Mich., 525; Breeze v. Tel. Co., 48 N. Y., 132; Passmore v. Tel. Co., 78 Pa. St., 238.

*Dillard & Muse*, for appellees.—1. The declarations of the agent of defendant having reference to the sending of the message were admissible. Tel. Co. v. Lydon, 82 Texas, 364; Tel. Co. v. Landis, 12 Atl. Rep., 467; Thomp. on Elec., sec. 458.

2. A party who has caused certain facts to be entered of record, and such record being in the exclusive possession of the person so making the same, has no right voluntarily to destroy such records or to remove the same beyond the jurisdiction of the court; and if such person does so destroy or remove the records, then he will not be permitted to introduce secondary evidence of its contents.

No damage could have resulted to defendant in excluding the copy of the log-book, as the same was only cumulative, the witness Sanders having substantially testified to the contents of the proposed copy of the log-book. 2 Rice on Ev., sec. 346; 3 Phillips on Ev., sec. 295.

3. The verbal statement made by the agent of the defendant at Paris to appellee McGlasson, that the message had been traced by him and had gone through all right, was a waiver of the conditions and stipulations on the back of said message.

LIGHTFOOT, CHIEF JUSTICE.—The following statement is substantially correct:

On November 9, 1889, appellees, Reeves & McGlasson, instituted their suit in the County Court of Grayson County against appellant. On June 28, 1890, appellees filed their first amended original petition in said suit, in which it was alleged that on September 30, 1889, plaintiffs were the owners of 357 bales of cotton, which were then at Whitewright, in Grayson County; that in order to sell said cotton, plaintiff McGlasson on said day went to the city of Paris, Texas, with the understanding between him and his coplaintiff, Reeves, that before finally closing said sale he would telegraph to said Reeves, at White-

wright, the price he could get for said cotton in Paris, for the approval of said Reeves; that on September 30, 1889, said McGlasson sold said cotton in Paris for 9⅝ cents per pound, on a basis of middling; that said trade was to be closed as soon as he could hear from Reeves, and he was to have until 12 o'clock of that day for that purpose; that soon after making said trade, and about 9 o'clock in the morning of said day, McGlasson immediately went to the office of the defendant in said city of Paris, and delivered to the defendant for transmission to said Reeves a telegraph message in substance as follows: "J. H. Reeves, Whitewright, Texas: Nine five-eighths best I can do. What shall I do? Must decide quick. H. C. McGlasson." That not having received an answer from said Reeves by the time named, said McGlasson procured from the purchaser of said cotton an extension of time for closing said trade, and the said purchaser did not withdraw his offer until 3 o'clock of the evening of said day, when he notified said McGlasson that he withdrew the same, and would not longer take said cotton at said price; that at the time of the delivery of said message by plaintiff McGlasson to the defendant's agent, said McGlasson paid to said agent the usual charge for the same; that said Reeves, anticipating a message from said McGlasson, frequently called at the office of the defendant at Whitewright after the same should have reached there, and in ample time to have returned a message to said McGlasson in the time required by his contract for the sale of said cotton; that a reasonable time for the transmission of said message from Paris to Whitewright would have been one-half hour; that the defendant negligently failed to transmit and deliver said message to said Reeves as it should have done within a reasonable time after receiving the same, and did not deliver it for several days thereafter, and too late to enable the said McGlasson to close the sale of said cotton at the price he had agreed upon, as aforesaid; that said McGlasson, having received no reply to said message, went to the office of defendant in Paris, and proposed to the defendant's agent to have said message repeated, and offered to pay the price charged for this purpose, and informed said agent of the importance of said message and the necessity for an immediate reply; that the said agent declined to do this, and told him that it would be useless; that he (the said agent) had examined and found that the message had been sent all right; that said offer to have said message repeated was in ample time for this to have been done and all mistakes corrected, and an answer received from said Reeves in time for said McGlasson to have closed the sale of said cotton at the price aforesaid; that if said Reeves had received said message he would have immediately replied thereto, instructing said McGlasson to close the trade for said cotton; that by reason of the negligence of the defendant in failing to transmit and deliver said message, said sale was lost to plaintiffs, and immediately thereafter the price of cotton declined in the markets throughout the country, as well as at Paris and Whitewright, and a few days thereafter plaintiffs were compelled to

sell said cotton at the price of 9¼ cents per pound, basis middling, which was the best price that could be obtained therefor; that if the mistake of defendant to deliver said message as it should have done was caused by reason of a mistake made by its agent in the name of the person to whom it was addressed, then it was gross negligence in said agent to make said mistake, as said name was plainly written.

On July 18, 1892, defendant filed its second amended original answer, wherein it was alleged, that if it undertook to transmit and deliver said message mentioned in plaintiffs' petition, then that such contract was made by defendant under a special agreement with one of the plaintiffs, H. C. McGlasson; that defendant company should not be held liable for mistakes and delays in the transmission or non-delivery of unrepeated messages, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same; that the message it undertook to transmit and deliver to the plaintiff was an unrepeated message, and that in the transmission of said message from Paris, Texas, to Whitewright, a mistake occurred without fault on the part of defendant or its agent, whereby the name of J. H. Reeves was changed to "J. P. Cese," and that on account of the change in the name defendant was unable to deliver said message promptly at Whitewright; that the message sent by plaintiffs was so badly or indistinctly written that the defendant nor any one else could reasonably say that said message was intended for J. H. Reeves; and that in sending such message errors occurred which were chargeable to plaintiffs' negligence in not writing said message so as to clearly indicate to whom the same was directed.

On September 8, 1890, plaintiffs filed their first supplemental petition, in which they alleged, that the plaintiff McGlasson went to the office of said defendant to have said message repeated, and he was then informed by defendant's agent that said action would be useless; that defendant had traced the telegram, and that it had gone through all right, and an answer would soon come.

On July 18, 1892, plaintiffs filed their second supplemental petition, in which, among other things, it was alleged that said message was plainly written, and at the time of its transmission was read over by defendant's agent receiving the same, and that said agent well understood the name of the person addressed in said telegram.

On September 23, 1892, the case was tried by the court without a jury, and resulted in judgment in favor of the plaintiffs for the sum of $930.30, from which the defendant appeals.

*Opinion.*—1. Appellant's first assignment of error is, that "the court erred in admitting, over defendant's objection, proof of conversations with and declarations by the agent of defendant at Paris respecting the message sued on, occurring after the message had been sent."

It was proper to show that after the message had been sent McGlasson called repeatedly at the office of appellant to inquire about its de-

livery, and suggested that the message be repeated, and was told by the agent that it had gone through all right. Tel. Co. v. Lydon, 82 Texas, 366.

2. The second assignment presented is, that "the court erred in refusing to permit defendant to prove by its chief operator at Dallas the condition of the wires over which the message sued on was transmitted, at the time of the transmission; and to introduce in evidence the transcript from defendant's log-book, as set out in defendant's bill of exceptions number 2."

By an examination of the record, it will be seen that the court below did not refuse to permit defendant to prove by its chief operator at Dallas the condition of the wires over which the message sued on was transmitted; on the contrary, such testimony was received, and the court based its seventh finding thereon, giving full force and effect to every part of such testimony. The only ground of complaint by appellant as set out in its bill of exceptions is, that the court refused to allow the introduction of *a copy* of certain items taken down in appellant's log-book kept by witness Saunders. The original was shown to have been in appellant's possession, and it failed to properly account for it. If the extracts copied from the log-book had been admitted, they could have added nothing to the weight of the same facts in the testimony of the witness, which was received and considered by the court. We find no error in this ruling.

3. The third assignment attacks the findings of fact of the court below in the following particulars:

(1) "That the sender of the message sued on proposed to have the same repeated." Appellee McGlasson, the sender of the message, testified: "I called at the office six or eight times for an answer. There was a conversation between myself and the agent about repeating the message, and I asked him if I had not better repeat the message, and he told me there was no need of repeating it."

(2) "That the message was caused to read differently from its original writing through negligence and want of due care on the part of the agents and employes of defendant in Paris, Dallas, Whitewright, and Denison." This finding, we think, is practically sustained by the evidence. It was shown by McGlasson that the message was delivered to appellant's agent at Paris about 9 o'clock a. m., and the sender informed the agent of its great importance and the necessity for an answer before 12 o'clock of that day. The agent read over the message aloud in the sender's presence, and read the address and message correctly. Mr. Stannard, appellant's agent, testified, that the message was received at 10:10 a. m., and sent off at 10:52 a. m., by way of Dallas, by a different agent, after considerable delay; and appellant could have shown exactly how the message left Paris, and how it was received at Dallas, but did not do so. It was plainly written, and directed in plain letters to J. H. Reeves, or Reeve, which probably would not have misled the operator at Whitewright, where J. H. Reeves was

well known. It was not shown what the message was when received at Dallas, but it was claimed that the wires were disturbed at that place by some parties moving houses. There were no electrical disturbances shown at any point along the line, but the day was clear and bright. The message as received at Denison was addressed to *J. P. Cese*, and signed *P. C.* McGlasson; and when it reached Whitewright it was addressed to *J. P. Cese*, and signed H. C. McGlasson. The message was not delivered to J. H. Reeves, although he called at appellant's office in Whitewright five or six times during the day and asked for a message. This is the substance of the evidence relied on to show negligence on the part of appellant in not properly transmitting and delivering the message.

(3) "That on the day of the transmission of said message there were no electrical disturbances of any kind, storms, or rains in the portion of the State over which said message was transmitted." It was proved that there were no electrical disturbances at Paris or Whitewright, but that the day was bright and clear. In the absence of proof by the telegraph company of any electrical disturbances at Dallas or Denison, it is fair to presume that there were none.

(4) "That the address on the original message was plainly written 'J. H. Reeves.'" The original message sent up clearly shows J. H. *Reeves*, or Reeve—the character after the "v" being somewhat indistinct; but the address having been read aloud by the company's agent as J. H. Reeves, we think the testimony is sufficient to support the finding.

(5) "That the agent of defendant at Paris who transmitted said message negligently failed to decipher the address of said message." The testimony does not disclose how the agent who *transmitted* the message deciphered it, or how he sent it. It was proved that Stannard received the message and understood it, but that Chapman sent it off some time later. It was not proved how he sent it. This finding is not supported by the evidence. The message might have been properly transmitted, and its address changed en route. It was not shown how it was when it reached the Dallas office. Stannard should have sent the message himself, or explained it to the agent who did transmit it.

4. The fourth, fifth, and sixth assignments will be considered together, and are as follows:

(4) "The court erred in finding as matter of law that the constant assurances given McGlasson by agents of defendant at Paris that the message had gone through all right, was negligence on their part, and that such assurances would have released McGlasson from the requirement of having said message repeated.

(5) "The court erred in finding as matter of law that defendant was required to use more than ordinary care in the transmission of the message, and would be guilty of negligence in not doing so.

(6) "The court erred in rendering judgment for plaintiffs, and said judgment is against the law, because the proof showed and the court found that the message sued on was an unrepeated message, sent under a special contract; that defendant was not to be liable for errors in the transmission thereof beyond the amount paid for sending the same."

The usual stipulation in regard to repeating messages was printed at the top of the blank, and the message was written under it. Said printed stipulation was as follows: "To guard against mistakes or delays, the sender of a message should order it *repeated;* that is, telegraphed back to the originating office for comparison. For this one-half the regular rate is charged in addition. It is agreed between the sender of the following message and this company, that the said company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery of any *unrepeated* message, beyond the amount received for sending the same."

It has been held, that the object of this stipulation was to avoid mistakes in messages, and that where the message was sent by the company to the wrong *place,* and hence not delivered, that it has no application, for the reason that a repetition from the wrong place would not in any manner affect or facilitate its delivery. Tel. Co. v. Simpson, 11 S. W. Rep., 385.

In this case there was not a mistake in a message delivered; but a failure to deliver any message whatever, owing to a mistake in the name of the party to whom it was addressed. A repetition of the message might have revealed the mistake, and caused the correct address to have been given. Our courts have upheld this stipulation as a proper safeguard to insure the correct transmission of messages. Tel. Co. v. Linn, 87 Texas, 7; Tel. Co. v. Neill, 57 Texas, 283; Womack v. Tel. Co., 58 Texas, 176; Tel. Co. v. Edsall, 63 Texas, 668; Tel. Co. v. Hearne, 77 Texas, 83; Redpath v. Tel. Co., 112 Mass., 71; Passmore v. Tel. Co., 78 Pa. St., 238.

But it is said by Judge Brown in his able opinion in the case of Telegraph Company v. Linn, above: "Such stipulation in the contract could not afford protection to the defendant against the negligence of its servants in failing to deliver the message with reasonable diligence. Thompson on Elec., sec. 228; Railway v. Wilson, 69 Texas, 742."

So, if there was negligence on the part of the servants of the company affecting the transmission or delivery of the message, the above stipulation in regard to repeating it would not benefit the company. The court below found that there was such negligence. In the first place, the erroneous transmission of the message, which is held not to be of itself sufficient evidence of negligence, may be considered in connection with other facts and circumstances in determining the issue. (1) Although the agent is informed of the necessity for prompt transmission and reply, the message is detained in the Paris office, ac-

cording to McGlasson's testimony, from 9 a. m. until 10:52 a. m.—an hour and fifty-two minutes; and according to the chief operator's testimony, from 10:10 a. m. until 10:52 a. m.—forty-two minutes.   (2) It was taken by Mr. Stannard, who read it correctly and understood the address, and it was placed by him on a hook, and finally sent by Chapman, and how it was sent does not appear, except by the way it was received at the Whitewright office, addressed to *J. P. Cese*, who was not known.   (3) When McGlasson, restless and uneasy, after repeated visits to the office for a reply, proposed that the message be repeated, he was told by the agent, Stannard (who had taken the message and allowed another to send it), that repeating the message was useless, as the message had gone through all right.   What did this mean to McGlasson?   That it had gone through as he had sent it, and as this agent had read it, to J. H. Reeves.   Here was a statement by the company, through its trusted agent, which was not true.   It was a statement of an important and material fact, upon which McGlasson relied.   The fact was peculiarly within the knowledge of the company's agents, and they were the only source from which McGlasson could obtain it.   He was not called upon to go elsewhere for the information, and had a right to rely upon it.   This statement was untrue. The agent was certainly negligent in not allowing him to have the message repeated, and in failing to find out whether the message had gone correctly even from his own office.   How could he say it had gone through all right?   The most careless investigation would have shown *him* (the agent) that the message had *not* gone through all right.   The testimony does not show that he made any investigation whatever, although the customer made repeated, anxious, and earnest visits to the office in his efforts to get a reply to the message.   Can it be said under such circumstances that there was no negligence on the part of the agents of the company?   It was certainly not the exercise of due care on their part to transmit and deliver the message.   It was negligence.   Parks v. Tel. Co., 13 Cal., 423.

In Thompson on the Law of Electricity, section 228, it is said:   "If the message is unreasonably delayed, or *not delivered at all*, actual damages may be recovered, notwithstanding a stipulation in the telegraph blank that only the cost of transmission is recoverable.   For like reasons, a condition in a telegraph blank relieving the company from liability for mistakes or delays in the transmission of unrepeated messages, and exempting from liability for errors in transmitting cipher or obscure messages, does not limit liability for failure to transmit cipher messages from the receiving office.   The rule which stipulates that unless a message is repeated the company will not be liable for failing to deliver it, is an unreasonable rule, because it is attempted on the part of the company to stipulate against liability for its own negligence."

Id., section 231:   "It has been further held, that where the sender of a message went to the agent of the company and asked him to ask

the sender whether the message was correctly transmitted, and the agent satisfied him that it was, that this amounted to a request by the plaintiff to have the message repeated, and it was immaterial that the forms established by the defendant for the repetition of messages were not complied with." See Thomp. on Elec., sec. 238; see also Tel. Co. v. Sheffield, 71 Texas, 570; Railway v. Wilson, 69 Texas, 739; Tel. Co. v. Lyman, 3 Texas Civ. App., 460.

Under the facts and circumstances of this case, we are of the opinion that there was not only negligence on the part of the company in its failure to transmit and deliver the message, but that the conversation between McGlasson, the sender of the message, and the agent of appellant at Paris, amounted to an offer on the part of the former to repeat the message, and the statement by the agent to him would amount to a waiver of that clause of the contract requiring messages to be repeated.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Delivered June 13, 1894.