WESTERN UNION TELEGRAPH CO. v. HUFFMAN.   (No. 7629.) *

(Court of Civil Appeals of Texas. Galveston. Dec. 20, 1918. Rehearing Denied Jan. 16, 1919.)

1. TELEGRAPHS AND TELEPHONES ⟐68(5)— FAILURE TO DELIVER MESSAGE—DAMAGES.

Where sender of telegram had written his brother that he was going to pass through town and would wire him before starting, and that the brother should meet him at the train and tell him of his father's condition, and, if he was worse, he would stop off, and before starting telegraphed, "Meet me at train 6 p. m. I am going to M."—telling the agent all the circumstances, and the telegram was not delivered, damages for distress of mind suffered by the sender, because of failure to see his father before he died, were not too remote.

2. TELEGRAPHS AND TELEPHONES ⟐53 — FAILURE TO DELIVER MESSAGE—PROXIMATE CAUSE.

Where plaintiff sent telegram to brother that he was coming through town on a certain train, and, if his father's physical condition was not better, brother should meet him at the train, and plaintiff would stop off, and the message was never delivered, the subsequent negligence of the brother in not notifying plaintiff of his father's dying condition would not bar recovery.

Appeal from District Court, Harris County; Henry J. Dannenbaum, Judge.

Suit by Forest Huffman against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Hume & Hume, of Houston, and Albert T. Benedict, of New York City, for appellant.

Woods, King & John, of Houston, for appellee.

GRAVES, J. Forest Huffman lived at New Caney, and his brother, B. D. Huffman, lived with their father at Humble, Tex.; both towns being on the Houston, East & West Texas Railway, 11 miles apart. Knowing that his father was ill, Forest, on November 17, 1915, from New Caney wrote and mailed a letter to his brother at Humble, saying he expected to have to go to McDade, Tex., where his wife was sick, which would take him through Humble, and, continuing, "so if I go, I will send you a telegram Saturday, November 20th, and I want you to meet the train and let me know just how papa is, and if he is no better I will get off and stay a day or so with him. Be sure and be there." The letter was duly received by the brother next day, November 18th. On the following Saturday, November 20th, between 12 and 1:30 p. m., before taking the train for McDade, and pursuant to the promise made in the letter, Forest Huffman delivered to the Western Union Company's agent at New Caney the following prepaid telegram:

"New Caney, Texas, November 20, 1915.

"B. D. Huffman, Humble, Texas. Meet me at train 6 p. m. I am going to McDade.
                    "[Signed] Forest Huffman."

His testimony as to what contemporaneously occurred between the agent and himself being in part:

"When I delivered this message to the agent I told him my father was ill, and I was sending

my brother a telegram to meet me at the train and let me know what his condition was. I told him that B. D. Huffman, at Humble, was my brother, and that I wanted him to meet me at the train and let me know the condition of my father, and, if he wasn't better, that I would get off and stay with him a day or so, and I told him that, if my brother wasn't at the train to meet me, I would go on through. I advised the agent of the fact, what the message was for, and asked him would it be necessary to write it on the message, and he said no, he would tell the agent at the other end. He charged me 26 cents for sending that message, which I paid him, and he told me that the message would be delivered to my brother. * * * That was the purpose in sending the message, to give me a chance to pay him a visit in case he wasn't well. * * * I did not know how serious his condition might be, and I told the agent that. * * * I was very apprehensive of my father's condition."

The telegraph company negligently failed to deliver the message to his brother at all, who consequently did not meet the train as directed therein, and Forest Huffman, although being on the train and reaching Humble and looking for his brother at about the time stated, did not stop over, but, believing from the fact that the brother had not met him that their father was better, went on through to McDade, arriving there next day, and hearing nothing further about his father's condition until his death four days later. If the telegram had been promptly delivered, as it easily could and should have been, the brother would have met Forest at the train and would have informed him that their father was not better, but was then very sick, and Forest would have stopped over and remained with his father until his death.

Upon the undisputed facts given, the court below, in response to a jury's verdict fixing that amount as the measure of his damages, entered judgment for $400.29 against the telegraph company in favor of Forest Huffman as compensation for the grief and distress of mind suffered by him because of the failure to see and be with his father before he died.

[1] Through a number of assignments presented in this appeal the telegraph company says the judgment should not stand, because, it is contended, the damages, both alleged and proven, were too remote, uncertain, contingent, speculative, and not within contemplation of the parties to the contract of transmission.

We think otherwise; the agent at New Caney was told that the father was ill, how seriously was not known, but the sender of the message wanted his brother to meet the train and give him that information, and if the father was no better he would get off and stay there with him; that if his brother was not at the train to meet him, he would go on through to McDade to attend his sick wife.

Being thus explicitly told in detail just what the purpose of the telegram was, precisely what reliance and dependence would be put upon it, and exactly the action appellee would take if its intended and easily accomplished object were not attained, that is, bringing his brother to meet the train with information about his father's condition that would have caused him to stop off and remain until his death, it seems to us, under the very cases cited and relied upon by appellant, it should have anticipated just what happened, the death of his father before appellee saw him. W. U. Tel. Co. v. Edmondson, 91 Tex. 209, 42 S. W. 549; W. U. Tel. Co. v. Linn, 87 Tex. 13, 26 S. W. 490, 47 Am. St. Rep. 58; W. U. Tel. Co v. Carter, 85 Tex. 580, 22 S. W. 961, 34 Am. St. Rep. 826.

There can be no doubt, nor does it contend otherwise, that appellant's inexcusable negligence in not delivering the message directly caused Huffman not to get off the train at Humble and remain there with his father; but is it relieved from the consequences of that act because of any supposed negligence in the conduct of either appellee or his brother, B. D. Huffman? It insists that both were so remiss in their duties toward each other and to appellant as to preclude the recovery had, the former in relying solely upon the telegram to bring the information he sought and in assuming from his brother's failure to meet the train, without further inquiry, that their father was better, the latter in neglecting to communicate their father's serious condition to Forest in some such way as would have enabled him to reach and be with the father anyway before death; it being shown that Dr. Cooper told the brother on the same night that Forest had passed through Humble going to McDade, and there being then four days of time and ample opportunity for that to be done.

We think added answer over what has before been said to these suggestions lies in the fact that the jury specifically acquitted the appellee of any negligent action in the very course here criticized, while the court itself, even if B. D. Huffman's subsequent inertia could be chargeable to appellee, and consequently be said to have been an issue in the case, which we do not think could properly be done, resolved the matter adversely to appellant in its recited conclusion that all issues of fact raised by the pleadings and evidence and not submitted to the jury, as this one neither was nor was requested to be, had been found in favor of the appellee. If in issue at all, the negligence of either brother was a question of fact which, upon sufficient evidence, or as against the sole objection here made that it was such as a matter of law, having been determined adversely to it, we think, left appellant in no condition to complain.

For this reason we conclude the court

committed no error in refusing to give various special instructions upon this point requested by appellant, since they all, except an inapplicable general one, told the jury as a matter of law that appellee could not recover because of his brother's negligence.

[2] Furthermore, we cannot agree that appellee was in law bound by the subsequent failure of his brother,. B. D. Huffman, to notify him of his father's condition; he had not constituted the brother his agent for any other purpose than to meet him at the train at Humble on the particular occasion and there advise him of his father's condition. We think this question is disposed of by the Supreme Court in Loper v. W. U. Tel. Co., 70 Tex. 693, 8 S. W. 602, where it is said:

"It is also insisted that it appears from the petition that the plaintiff's wife could have been at her son's burial but for the fault of the railroad, and that therefore the petition is insufficient. To this it must be answered that we think it is affirmatively shown that, if the message had been promptly delivered, the wife would have arrived before the burial, so that any subsequent default on the part of the railroad company in failing to make connections, on the trip actually made, would not affect the case."

All questions raised and assignments presented have been carefully considered, but none of them in our opinion present reversible error, and the judgment will be affirmed.

Affirmed.