**ALLRIGHT, INC., Appellant,**

v.

**Roy Lee ELLEDGE, Jr., Appellee.**

No. 16310.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

April 11, 1974.

Rehearing Denied May 9, 1974.

Tipton & Bishop, George M. Bishop, Houston, for appellant.

Chilton Bryan, Lowell T. Cage, Houston, for appellee.

COLEMAN, Chief Justice.

This is a suit for damages resulting to an automobile owned by Roy Elledge when it was stolen from a parking garage. A judgment was entered for the plaintiff based on jury findings. Interesting issues involved are (1) the point in time when the parking garage owner's duty of ordinary care arises, and (2) whether a parking lot operator can limit his liability for negligence.

The plaintiff had a contract with the defendant by reason of which he had the right to park his automobile on the ground floor of the parking garage. He had in-and-out privileges. For this service he paid a fee of $50.00 per month. The general public was permitted to park in this garage on an hourly fee basis. The owners of such cars were required to stop in the entrance to the garage to secure a parking ticket. The cars would then be parked by attendants.

On January 26, 1972, plaintiff drove his car into a parking garage owned by the defendant by way of the exit lane and parked it in that lane. When he got out of the car he left the keys in the ignition. Two of defendant's employees saw the plaintiff park his car. There is no evidence that any of the defendant's employees removed the keys from the car or otherwise manifested by physical acts the taking of custody and control of the car. Within a period of about four minutes the car was stolen. It was recovered some few days later in a damaged condition.

William Pennie was employed by the defendant to park cars in the parking garage on the date of the theft of the plaintiff's car. He was acquainted with Mr. Elledge and saw him park his car in the exit ramp on the date in question. He had seen him park there before and had moved his car from the exit ramp to the regular parking space on previous occasions. He ordinarily waited until the traffic died down before he moved the car. He would then remove the keys from the car. He had never removed the keys from Mr. Elledge's car while it was sitting on the exit ramp. When Mr. Elledge parked on the exit ramp they were usually too busy to get the keys or to remove the car.

Gloria Boatwright was the defendant's cashier on January 26, 1972. She was not in the cashier's booth when Mr. Elledge parked his car but she saw him when he got out of the car. She later heard a car start and looked out and saw someone driving off in his car. She testified: "I told him on several occasions that his car might be taken if he didn't take his keys out of his car when he drove his car into the exit. He has on occasions taken the keys out and brought them to me." She testified that Mr. Elledge had previously parked his car at the same place on the exit ramp and that the car normally would be moved by an employee over to the other side by the cashier's booth. After the car was moved an employee would sometimes take the keys out of the car but she had never seen an employee take the keys while the car was sitting on the exit ramp. She testified: "The only reason people park in the exit ramp is because they can't wait to get into the garage. They are in too big of

a hurry. At that time the employees would be too busy parking other cars to take the keys out of the cars in the exit ramp."

In answer to special issues the jury found (1) that it was the custom of the defendant to take possession of cars which had been driven into the garage and left unattended by the owners, (2) that plaintiff left his car in reliance on that custom, (3) that defendant failed to take possession (the term "possession" was defined by the court to mean the actual acceptance of custody and control over the automobile in question by physical acts which manifested the acceptance of that automobile for parking and storage; (4) that the failure was a departure from their customary practice; (5) that the departure from customary practice was negligence; (6) that the negligence proximately caused plaintiff's damage; (7) that the plaintiff had delivered his automobile into defendant's garage for parking; (8) that the defendant failed to take possession of the car; (9) that the failure was negligence; (10) which proximately caused plaintiff's damage; (11) that the defendant failed to remove plaintiff's keys; (12) that the failure was negligence; (13) which proximately caused plaintiff's damage; (14) that the defendant failed to keep watch over plaintiff's car; (15) which was negligence; (16) which proximately caused plaintiff's damage; (17) that defendant failed to have a sufficient number of employees; (18) that this failure was negligence; (19) that this negligence proximately caused plaintiff's damage.

■ As a general rule, in order to constitute a bailment transaction there must be a contract, express or implied, delivery of the property to the bailee and actual acceptance of the property by the bailee. An essential to bailment is delivery of the property by the bailor to the bailee and without such a delivery there can be no bailment. Since the relation is a contractual one, the duty and liability ordinarily cannot be thrust upon one without his knowledge or consent, but must be voluntarily assumed. Bill Bell, Inc. v. Ramsey, 284 S.W.2d 244 (Tex.Civ.App.—Waco 1955, n. w. h.); Adair v. Roberts, 276 S.W.2d 565 (Tex.Civ.App.—Texarkana 1955, n. w. h.); Rust v. Shamrock Oil & Gas Corporation, 228 S.W.2d 934 (Tex.Civ.App.—Amarillo 1950, n. w. h.); Panhandle South Plains Fair Association v. Chappell, 142 S.W.2d 934 (Tex.Civ.App.—Amarillo 1940, n. w. h.).

■ The defendant contends that in the absence of evidence that it accepted the custody and control of the car as manifested by physical act, it had no duty of exercising due care for the protection of the car. The cases cited above require that the bailor deliver the property to another in trust for a specific purpose, and that the bailee accept such delivery, in order to create a contract of bailment. They do not require that the bailee's custody and control be manifested by physical acts. A duty of exercising due care for the protection of personal property may arise out of either an express or an implied contract of bailment on delivery of the property. By reason of the express contract between the parties the defendant owed plaintiff a duty to accept the car for storage on delivery. The evidence and findings of the jury establish an implied acceptance of delivery of the automobile when it was parked in the exit lane of the garage by plaintiff. A duty to exercise due care for the protection of the automobile arose immediately.

■ The jury found in answer to Special Issue No. 11 that the defendant failed to remove the keys from plaintiff's automobile, and in answer to Issues 12 and 13 found that such failure was negligence and a proximate cause of the plaintiff's damages. The trial court erred in submitting Special Issue No. 11 over the objection of the defendant since the facts with reference to this issue were uncontroverted. This error, however, was not one which probably caused the rendition of an improper judgment and is harmless.

There is evidence that the manager of the parking garage knew that Mr. Elledge on occasion parked his car in the exit ramp. There is evidence that no one had ever told Mr. Elledge not to park in the exit ramp. The jury might believe from this evidence that both Mrs. Boatwright and Mr. Pennie realized the danger of theft if the ignition keys remained in the automobile and that in the exercise of ordinary care they should have removed the keys from his automobile before proceeding with their other duties. The evidence supports the jury's answers to Special Issues 12 and 13.

The defendant complains of the action of the trial court in overruling its objections to the form of certain other issues submitted by the trial court to the jury by reason of the wording of such issues. We find it unnecessary to reach these questions. The findings of the jury in answer to Special Issues 11, 12 and 13 are sufficient in themselves to support the judgment of the court awarding the plaintiff a recovery of the damages assessed in his favor by the jury. City of Waco v. Branch, 8 S.W.2d 271 (Tex.Civ.App.—Waco 1928, writ ref.).

The defendant plead that the plaintiff was negligent in parking the car on the exit ramp and leaving the keys in the ignition, and that this negligence relieved it of the responsibility for the loss of the car due to its own negligence. The trial court submitted a series of issues which were designed to place before the jury the question of the contributory negligence of the plaintiff and the defense of assumption of risk. The jury failed to find the facts necessary to establish these defenses. However, they did find that Mrs. Boatwright instructed Mr. Elledge to remove the keys from his automobile when parking on the exit ramp; that the plaintiff failed to remove the keys from his automobile after parking on the exit ramp as previously instructed by Mrs. Boatwright; that such failure was negligence, but failed to find that this negligence was a proximate cause of the occurrence in question. The jury failed to find that the defendant took over custody and control of the plaintiff's car on January 26, 1972 in answer to Special Issue No. 24. In answer to Special Issue No. 34 it found that the plaintiff's car was stolen from the garage prior to any attendant of the garage taking possession of the car.

We do not reach the question of whether the contributory negligence of a bailor will bar recovery from a bailee of damages resulting from the negligence of the bailee. In this case the jury found that the plaintiff was negligent but failed to find that such negligence was a proximate cause of the resulting injury. In Phoenix Refining Co. v. Tips, 125 Tex. 69, 81 S.W.2d 60 (1935), the Supreme Court said:

"Before it can be said that an act of negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of such act of negligence, and that the party committing the act ought reasonably to have foreseen such consequences in the light of attending circumstances."

The defendant contends that there is no evidence to support the action of the jury in failing to find that the plaintiff's negligence was a proximate cause of the occurrence in question. There is evidence that the car was parked inside the parking garage. There were four or five employees in and around the area where the car was parked. The plaintiff and his car were known to these employees. Reasonable minds might differ as to whether in light of these circumstances plaintiff ought reasonably to have foreseen that the car might be stolen. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (1950).

The plaintiff signed an instrument entitled "Contract Parking Agreement", the first paragraph of which reads:

"Contract parking is on a month to month basis. In consideration of the

low rates charged for parking, operator will not be responsible for loss by fire, misdelivery or theft, except such loss occasioned by negligence of operator, and then only up to a maximum of $100.00. Proportionately greater rates must be paid in advance if customer sets larger limits of liability."

Based on this provision of the contract the defendant contends that the trial court erred in entering a judgment for a sum in excess of $100.00.

■ It is well settled that garage keepers may limit their liability for damage to automobiles left with them by reason of theft or fire. These limitations of liability, however, will be strictly construed against the bailee. Langford v. Nevin, 117 Tex. 130, 298 S.W. 536 (1927). In *Langford* the court stated that no prior Texas case had determined whether a parking lot owner could exempt itself from the exercise of ordinary care. Therefore, this is a case of first impression.

"Agreements exempting a party from future liability for negligence are generally recognized as valid and effective except where, because of the relationship of the parties, the exculpatory provision is contrary to public policy or the public interest." Crowell v. Housing Authority of the City of Dallas, 495 S.W.2d 887 (Tex.1973).

What is public policy? Justice Holmes, in Beasley v. Texas & Pacific Ry. Co., 191 U.S. 492, 48 L.Ed. 274, 24 S.Ct. 164, 168 (1903), defined public policy as the interest of others than the parties to the contract. A more comprehensive statement by Justice Wanamaker in Pittsburgh, C., C. & St. L. Ry. Co. v. Kinney, 95 Ohio St. 64, 115 N.E. 505, 507 (1916), is:

"It has frequently been said that such public policy, is a composite of constitutional provisions, statutes, and judicial decisions, and some courts have gone so far as to hold that it is limited to these. The obvious fallacy of such a conclusion is quite apparent from the most superficial examination. When a contract is contrary to some provision of the Constitution, we say it is prohibited by the Constitution, not by public policy. When a contract is contrary to a statute, we say it is prohibited by a statute, not by a public policy. When a contract is contrary to a settled line of judicial decisions, we say it is prohibited by the law of the land, but we do not say it is contrary to public policy. Public policy is the corner stone—the foundation—of all Constitutions, statutes, and judicial decisions; and its latitude and longitude, its height and its depth, greater than any or all of them."

A review of Texas Cases on limitation of liability for negligence discloses that exculpatory agreements generally are not enforced when there is a disparity in bargaining power. A provision in a ticket given to a hotel guest depositing articles with the hotel for safekeeping that the articles deposited are at the owner's risk has been held not to exempt the innkeeper from the consequences of his own negligence. Dallas Hotel Company v. Richardson, 276 S.W. 765 (Tex.Civ.App.—Dallas 1925, no writ). It has been held that warehousemen render duties in the nature of a public service and lack the power to contract against liability for their own negligence. Cameron Compress Co. v. Whitington, 280 S.W. 527 (Tex.Com.App. 1926). In Dittmar v. New Braunfels, 20 Tex.Civ.App. 293, 48 S.W. 1114 (1899, no writ), it was held that a city cannot require a citizen, as a prerequisite to his right to receive water, to sign a contract releasing the city from liability for any scarcity or failure in supply or for defects in quality. A telegraph company was not allowed to exempt itself by contract from liability for damages caused by its own negligence. Western Union Telegraph Co. v. Linn, 87 Tex. 7, 26 S.W. 490 (1894).

In a recent case the Texas Supreme Court held that an exculpatory clause in a building lease was void as against public

policy because it presented a classic example of unequal bargaining power. Crowell v. Housing Authority of the City of Dallas, supra. In its opinion the Court stated:

> "The rules applicable to public utilities have been applied by some courts to innkeepers and public warehousemen. According to Professor Prosser, there is a definite tendency to extend the same rules to other professional bailees such as garagemen and owners of parking lots and parcel checkrooms. These bailees are under no public duty, but they deal with the public and the indispensable need for their services deprives the customer of any real bargaining power. See Prosser, The Law of Torts, 3rd ed. 1964, § 67."

We consider that had the clause in the contract between plaintiff and defendant exempted the defendant from all liability for the consequences of its negligence it would have been contrary to the public interest and void as against public policy.

■ The defendant recognized that it was responsible for the damage which its customers might suffer by reason of its negligence. It attempted by contract to limit its liability to the sum of $100.00 unless the customer wished to negotiate a contract at a higher fee. The fee required for unlimited liability is not in evidence. The customer of a public parking garage is at such a disadvantage in bargaining power that he would be practically compelled to accept limited liability. In effect the customer is required to purchase insurance against damage resulting from the bailee's negligence by this agreement. We hold this agreement limiting liability to be contrary to the public interest and void. The trial court did not err in entering judgment for the actual damage as found by the jury.

All other points of error presented by appellant's brief are either immaterial or have been sufficiently considered in this opinion. They are respectfully overruled.

The judgment of the trial court is affirmed.