WESTERN UNION TELEGRAPH COMPANY v. R. L. BENNETT.

Decided December 1, 1909.

**1.—Telegraph—Negligence—Contract—Unrepeated Message.**

A telegraph company can not protect itself against liability for negligence by an agreement that for an unrepeated message it should not be liable for delay in transmission, though the delay was due to an error in transmitting the address given.

**2.—Special Demurrer—Harmless Error.**

Error in sustaining plaintiff's special exception to defendant's plea was not ground for reversal where the benefit of the defense therein presented, so far as same was good in law, was allowed defendant by the instructions under which the case was submitted to the jury.

**3.—Requested Charge—Damages.**

A requested charge denying plaintiff a recovery if the evidence failed to show certain special damages alleged, was properly refused, where plaintiff's claim was not limited to such special damages.

**4.—Same.**

Requested charge on the subject of damages criticised as inaccurate and confusing.

**5.—Telegraph—Mistakes in Transmission—Pleading.**

A plea seeking to excuse delay in delivering an unrepeated telegram by attributing it to a change of the address in transmission due to specified liabilities to error in sending and receiving communications by electricity, is held not to present the issue as to an excusable mistake in writing down the message on a typewriter.

**6.—Charge—Assuming Fact.**

Evidence held to present a question of fact as to whether delay in delivering a message was due to a mistake in transmitting the address, and to render improper a requested charge relieving defendant from liability in certain events, assuming that to be the fact.

**7.—Damages.**

A recovery of $1,150 as damages for distress of mind caused by plaintiff's failure, through delay in delivering a telegram by defendant, to reach a dying mother before she became unconscious, sustained as not excessive.

Appeal from the District Court of Tarrant County. Tried below before Hon. Irby Dunklin.

*Spoonts, Thompson & Barwise,* for appellant.—It was error to sustain the exceptions to defendant's plea. Western U. Tel. Co. v. Brown, 75 S. W., 359; Womack v. Western U. Tel. Co., 58 Texas, 178; Western U. Tel. Co. v. Neil, 57 Texas, 291; Western U. Tel. Co. v. Hearne, 77 Texas, 84; Western U. Tel. Co. v. Elliott, 7 Texas Civ. App., 482; Western U. Tel. Co. v. Reeves, 8 Texas Civ. App., 37; Primrose v. Tel. Co., 154 U. S., 1.

The mere fact that there was a mistake in the telegram is not sufficient evidence of defendant's negligence to justify a recovery, and in this case there was no testimony of any negligence upon the part of the defendant, except the mere mistake in changing the address from 214 to 215 Main Street. White v. Western U. Tel. Co., 14 Fed., 710; Jones v. Western U. Tel. Co., 18 Fed., 717; Hart v. Western U. Tel. Co., 66 Cal., 579; Western U. Tel. Co. v. Brown, 75 S. W., 359; Coit v. Western U. Tel. Co., 130 Cal., 657; Cowen v. Western U. Tel. Co., 58 Mo. App., 257; Lassiter v. Western U. Tel. Co., 89 U. C., 334.

*Bell & Milam,* for appellee.—A telegraph company can not by a stipulation in the contract obtain protection against the negligence of its servants in failing to transmit or deliver a message with reasonable diligence. Western U. Tel. Co. v. Linn, 87 Texas, 7; Mitchell v. Western U. Tel. Co., 12 Texas Civ. App., 262.

After the court has charged fully on a phase of the case it is not error to refuse a requested charge to the same effect. Western U. Tel. Co. v. Piner, 9 Texas Civ. App., 152; Western U. Tel. Co. v. De Andrea, 45 Texas Civ. App., 395.

FISHER, CHIEF JUSTICE.—This is a suit by the appellee against

the telegraph company to recover damages in the sum of $1950 for the negligent failure of the defendant to promptly transmit and deliver to appellee the following telegram: "Blossom, Texas, March 21, 1907. R. L. Bennett, No. 214 Main Street, Ft. Worth, Texas. Mother worse. Come at once. (Signed) C. L. Bennett." C. L. Bennett is the brother of the plaintiff, R. L. Bennett. The mother referred to in the telegram was the plaintiff's mother.

The allegations of the plaintiff's petition are substantially to the effect that the telegram was delivered to defendant at Blossom about eight o'clock p. m., March 21, 1907; that plaintiff did not receive the same until nine o'clock and twenty-five minutes a. m. on the 22d of March; that upon receipt of the telegram he immediately left Ft. Worth and reached the town of Blossom at eleven o'clock a. m. on the 23d of March; that being the earliest hour at which he could reach that town after he was advised of the contents of the message; that when he reached that place his mother was unconscious, and so remained unconscious until the time of her death, which occurred on the 24th of March at 8:30 p. m.; that if the message had been promptly delivered he could have reached the bedside of his mother before she became unconscious; that the defendant was guilty of negligence in failing to promptly transmit and to deliver the message to him after it was received at Ft. Worth, which was about 7:53 p. m. on the night of March 21. It is also alleged that by reason of the negligent failure to transmit and deliver the message, plaintiff was delayed in reaching his mother in her last sickness, and was deprived of the comfort and consolation of being with her during the last hours in which she was conscious and of receiving her dying blessing, and that by reason of the premises the plaintiff suffered great disappointment and grief, mental pain and anguish in the sum of $1950.

The defendant answered by general demurrer, general denial, and specially that "if it undertook to send the telegram, as alleged in the plaintiff's petition, that the same was sent subject to certain conditions and stipulations, which constituted the contract by virtue of which the telegram was sent; that sending telegrams by electricity is always subject to a great many contingencies, which are liable to cause a change in a telegram and which can not be guarded against by the use of ordinary care; that the telegraphic alphabet consists of a series of dots and dashes, the combination of which constitutes letters and words, and that it is frequently difficult for an operator to distinguish between a dot and a dash, or to correctly read the telegraphic signals; and any little interruption or interference with the wire, or any noise at the time of taking a message from the wire, and numerous other things may interfere with the correct reading, transmission and transcribing of a telegraphic message; that the only way to avoid mistakes of this kind is to provide for repeating the message, that is, telegraphing it back from the terminal office to the sending office for comparing; that the contract by virtue of which said message was sent provided as follows: 'To guard against mistakes or delays, the sender of a message should order it repeated, that is, telegraphed back to the originating office for comparison.

For this, one-half the regular rate is charged in addition. It is agreed between the sender of the following message and this company that said company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery of any unrepeated message beyond the amount received for sending the same.' Defendant says that for some cause, not resulting from any negligence of it or its employes, the address in said message, during the process of transmission, became changed from No. 214 Main Street to 215 Main Street; that the change in said address was the cause of the delay in the delivery of said telegram; that had said message been repeated said mistake would not likely have occurred; that said message being an unrepeated message, and said mistake having resulted without negligence on the part of the defendant, and the delay in the delivery of said message having been caused by said mistake, defendant says that it is not liable to the plaintiff for the amount paid for the sending of said message, to wit, the sum of twenty-five cents."

To this special plea the plaintiff filed a special exception on the ground that it attempts to excuse the defendant on account of its own negligence. The trial court sustained this special exception. The verdict and judgment below were in appellee's favor for the sum of $1150.

We find that the telegram as above set out was prepared at Blossom, Texas, by the plaintiff's brother, C. L. Bennett, and was promptly transmitted from that telegraph office to the appellant's telegraph office at Ft. Worth, Texas, where it was received about 7 o'clock and 53 minutes p. m. on the night of March 21. Plaintiff at that time was on duty at his place of business at 214 Main Street, which is the address as given in the telegram; that by the exercise of ordinary care upon the part of appellant's messengers or delivering department, he could have been found at that place and the message delivered to him that night or early the next morning in time for him to have taken a train and reached the bedside of his mother at Blossom, Texas, before she became unconscious; that by reason of this negligence the plaintiff was deprived of the privilege of seeing his mother during her conscious hours and the consolation that would have resulted therefrom, and that she, from the time of his arrival to the time of her death, which occurred at the time alleged in the petition, never regained consciousness; and as a result of this negligence and for this breach of duty upon the part of appellant to promptly deliver the message there is evidence which tends to show that the appellee suffered mental anguish for being deprived of the privilege of being with his mother during her conscious hours.

The evidence on the subject of the supposed mistake in the telegram as received at Ft. Worth in giving or not giving the proper street number of his address, is in such a condition that no definite and certain finding can be made upon it. There is evidence which tends to show that when the telegram was received at Ft. Worth the street number was given at 215 instead of 214, the proper number. On the other hand, the appellee testified, as shown on page

cight of the statement of facts, that the telegram that was delivered to him was not addressed to 215 Main Street, but was addressed to 214 Main Street, and stated that "I do not know whether it was the original telegram or not; I do not know about that. As to whether the 214 had been stricken out and the 215 written in, I will say that there never was any 215 there. I am sure of that. I was on duty there that night." Then he goes on to testify that the place where he was on duty was at 214, and there he could have been found. He did not receive the telegram until the next morning at the time alleged in the petition, when his evidence shows that he was informed by the party for whom he was working that there was a telegram for him at the telegraph office, where he promptly went and it was delivered to him. Thereupon he made immediate preparation for departing and left on the earliest train that he could take in order to reach the bedside of his mother. But, assuming that the mistake was made in the transmission of the message, the evidence would justify the conclusion that the appellee could have been found at his place of business, at 214, if the company or its agents had exercised ordinary diligence to discover his whereabouts. Furthermore, there is evidence, as shown by the testimony of the messenger boy, George Heare, as set out on pages 31 and 32 of the statement of facts, which tends to contradict the evidence offered by the defendant tending to show that the failure to deliver was on account of the mistake in the street number, wherein he testifies substantially to facts that would justify the conclusion that the message was never sent out that night by the telegraph company in an effort to deliver it to the plaintiff.

Appellant's first assignment of error complains of the action of the trial court in sustaining plaintiff's special exception to that part of its answer which pleaded the stipulation providing for repeating the message in order to guard against errors or mistakes. So much of this stipulation that attempted to relieve the telegraph company from its negligence in not delivering or transmitting an unrepeated message, could not be enforced. Western U. Tel. Co. v. Lynn, 87 Texas, 7; Mitchell v. Telegraph Co., 12 Texas Civ. App., 262, 33 S. W., 1019. But for merely errors or mistakes committed in the transmission, such a stipulation is lawful and reasonable. Womack v. Telegraph Co., 58 Texas, 178; Telegraph Co. v. Neil, 57 Texas, 291. This stipulation was so broad that it attempted to relieve the appellant of all negligence or mistakes, even though negligently made, if the message was not repeated. Furthermore, no possible error could have resulted to the appellant in the action of the trial court in sustaining the exception, because in the second paragraph of the charge the appellant was given the benefit of the rule that protected it against errors committed in the transmission, in that the jury was instructed that if the number of the address was changed through error in transmitting the telegram without negligence, to find for the defendant. If the demurrer had not been sustained, this instruction gave the defendant all the protection it would have been entitled to and was as far as the court could lawfully go in

that direction in submitting the issue to the jury. The action of the court in this respect shows no reversible error.

Appellant's second assignment is to the effect that the court erred in not submitting to the jury appellant's first special instruction, which is as follows: "Even though the jury believe from the evidence that the defendant was guilty of negligence in failing to deliver said message in time to enable the plaintiff to take the train that left Ft. Worth at 8 o'clock and 5 minutes on the morning of March 22, 1907, still the plaintiff can not recover, unless the jury further finds that plaintiff would have derived comfort and consolation from being with his mother prior to her becoming unconscious, and would have received her dying blessing, and if you find that he would not have received such consolation and would not have received such dying blessing, and did not suffer mental anguish because thereof, your verdict will be for defendant."

On the subject of damages the court instructed the jury as follows: "Then you will return a verdict in favor of the plaintiff for such sum of money as you believe from the evidence will reasonably compensate him for such mental anguish so suffered by him, if any." It is contended by appellant that the pleadings of the plaintiff on the subject of damages related solely to the damages he sustained by reason of being deprived of his mother's dying blessing, and the consolation he would have received if he had been permitted to reach the bedside of his mother before she became unconscious. We do not understand the plaintiff's case, as made by the petition, to rest solely upon these two items, but it seeks to recover also for the mental suffering he sustained generally, on account of not being able to reach his dying mother before she became unconscious. The special charge was too restricted and therefore was properly refused; but the charge as quoted above and as copied in appellant's brief, will not stand a comparison with the charge as contained in the record. The difference consists in the words as appear in line four from the bottom of the charge as stated in the record. As we have copied this charge from the brief, it will be observed that the word "not" immediately preceding "have received such consolation," is stated in the charge as quoted. This word is not given in the charge as stated in the record. Of course, we are bound by the charge as copied in the record, and must assume that it is there correctly stated. This being true, it was correctly refused, if for no other reason than that it was not correctly framed. Therefore, the charge presented to the court and which it passed upon and which it refused, after omitting certain parts already given, reads as follows: "Still the plaintiff can not recover unless the jury further finds that plaintiff would have derived comfort and consolation from being with his mother prior to her becoming unconscious and would have received her dying blessing, and if you find that he would have received such consolation and would not have received such dying blessing and did not suffer mental anguish therefrom, your verdict will be for defendant." This is virtually to the effect that although he would have received consolation from being present with his mother and would

not have received the dying blessing, he could not recover, unless the expression "and did not suffer mental anguish therefrom" refers to the fact that although being deprived of the consolation, he suffered no mental anguish therefrom. The punctuation does not limit this expression solely in its application to the consolation that he was deprived of by not being present. The expression "did not suffer mental anguish" evidently applies to both elements, being deprived of the consolation and not receiving her dying blessing. The least that can be said of the charge as framed is that it is confusing.

Appellant's third, fourth, fifth, sixth, seventh, eighth, ninth and tenth assignments of error will be considered and disposed of together. In these assignments the appellant, in effect, contends that the failure to deliver the message in question was attributable either to an error in transmission or to the error of the operator in transcribing the message from the telegraph wire with the use of a typewriter, and that it was error for the trial court to limit the appellant's defense of error or mistake by its charge solely to the issue of transmission. The court in its charge No. 2 gave to the appellant the benefit of any error or mistake not attributable to its negligence that occurred in transmitting the message. Charge No. 1 of the trial court presented the theory of the plaintiff's case and instructed the jury substantially to the effect that plaintiff would be entitled to recover if the defendant was guilty of negligence in transmitting or delivering the message. These assignments present the question that the court erred in its general charge upon this subject in restricting the question to mistake and error committed in transmitting, and not submitting the question of error or mistake committed in transcribing the message from the telegraph wire with the use of a typewriter, and in refusing appellant's special charge No. 2, which was broadly to the effect that the jury could consider the mistake in the address however committed, unless it resulted from the negligence of the telegraph company. As we construe the special answer of the defendant upon this subject it only relates to error committed in transmitting the message over the wire. The answer specially points out what could occur or happen during the process of transmission that might occasion or bring about such a mistake, and there is nowhere mentioned in the answer the fact that the mistake occurred or could have occurred in the process of transcribing it by the use of a typewriter. It is true there is considerable evidence upon this question. There is an expert who testified to facts accounting for how a mistake of this kind could have occurred in transcribing by the use of a typewriter. Having substantially and circumstantially pointed out in its plea how the mistake did or could have occurred, we think the appellant should be confined to the facts there pleaded. Subdivision 2 of the general charge of the trial court gave the defendant the benefit of all that it was entitled to upon this subject. Furthermore, special charge No. 2, which was requested and refused, in effect, assumed the existence of a fact about which in our opinion there was room for controversy. So much of the charge that relates to this question is as follows: "If the jury find that the cause of delay in the delivery of the telegram sued upon was the mistake in

the address of plaintiff in changing it from 214 to 215 Main Street, then it becomes your duty to determine whether said mistake resulted from the negligence of the defendant telegraph company," etc. This charge assumes that there was a mistake in the address. By reference to the finding of fact it will be seen that we have quoted the evidence of the plaintiff upon this subject. It is sufficient to raise the question whether the message as received at Fort Worth and transcribed gave the wrong number of plaintiff's address. The effect of the testimony of the plaintiff tends to show that the message was correctly addressed, that is, 214 Main Street. The evidence of the mistake was furnished by the defendant's witnesses. The jury were not bound to believe them, and could have concluded that this question of mistake in the street number was an afterthought in order to justify or excuse the negligence of the delivering department of appellant's company in not promptly delivering the message. Some of these assignments also complain of the second paragraph of the court's charge in that it was misleading and confusing. They are also overruled on this point.

Our findings of fact substantially dispose of appellant's eleventh assignment of error.

The twelfth assignment complains of the charge of the trial court on the subject of damages. This has been practically disposed of in considering appellant's second assignment of error. The mental anguish was not confined solely to the comfort and consolation of being with his mother during her last hours or receiving her dying blessing.

Our findings of fact dispose of the thirteenth and fourteenth assignments.

The fifteenth assignment complains of the verdict and judgment as excessive. As before stated, the verdict and judgment are for $1150. While it may appear to be large, we can not say it is excessive. There is nothing in the record indicating that the jury were influenced by passion or prejudice.

We find no error in the record and the judgment is affirmed.

*Affirmed.*

Writ of error refused.